[Civ. No. 12391.   First Dist., Div. One.   Oct. 9, 1943.]

Estate of ROBERT JONES, Deceased. LYLE HILL PRESBYTERIAN CHURCH et al., Appellants, v. KATIE KENNEDY JONES, as Executrix etc., et al., Respondents.

John B. Ehlen for Appellants.

Gillogley-Crofton & Foster for Respondents.

PETERS, P. J.—The executor and executrix of the will of Robert Jones, being in doubt as to whether there had been an ademption of certain legacies contained in the will, petitioned for instructions under section 588 of the Probate Code. The lower court determined that the bequests in question were specific. Inasmuch as there was no property of the kind described in the legacies in question in the estate at the time of death, the result of such holding is that the legatees involved will receive nothing under the will. From this order the legatees adversely affected prosecute this appeal.

The appeal has been taken on an agreed statement of facts. It appears therefrom that the decedent left a will executed in San Francisco on April 22, 1921. In the first main paragraph of the will he directed that his debts be paid and that his body be shipped to the family burying ground at Umgall, Templepatrick, County Antrim, Ireland. The next paragraphs are the ones here directly involved. So far as pertinent here, they read as follows:

"SECONDLY, I hereby give and bequeath, five one thousand dollar Pacific Gas & Electric five percent bonds, to my Mother Ann Jones, she to receive the income from said bonds as long as she lives, at her death the bonds to be divided one each to my brothers, David, James, William, Nevin, Samuel Jones. I appoint my brothers, David Jones, James Jones, William Jones, Trustees for my Mother without bonds.

"(third) I hereby give and bequeath two one thousand dollar Pacific Gas & Electric five percent bonds to Lyle Hill Presbyterian Church, at Lyle Hill, Templepatrick, County Antrim Ireland, the income from said bonds to be divided equally—between Ballyutoag sunday school, and Lyle Hill sunday school. When the bonds become due, the money to be reinvested by the trustees of Lyle Hill Church, the income to be divided equally between the above mentioned sunday schools."

The testator then bequeathed his jewelry to his wife to be kept by her for his son Robert Jones, and then left the balance of his estate one-third to his wife and two-thirds to his son, with certain detailed provisions as to what should happen in the event his son should predecease him. After certain other provisions not here material he provided: "I request the executors of my will to pay the Inheritance Tax if any, out of my estate, on the bonds given to the trustees for my mother, and the bonds given to Lyle Hill Church." He also purported to list the property in his estate but did not make any reference therein to the Pacific Gas & Electric Company bonds.

According to the agreed statement, when the will was executed on April 22, 1921, the deceased owned ten $1,000 General and Refunding five percent bonds of the Pacific Gas & Electric Company, having purchased seven such bonds on March 7, 1921, and three on April 5, 1921. These bonds were unregistered bearer bonds. They remained in the possession of the deceased until January 5, 1937, when they were redeemed by the issuing company for $10,000. The testator died October 19, 1941, and on that date owned no Pacific Gas & Electric Company bonds. The mother of the testator predeceased him, but whether she died before or after the bonds were redeemed does not appear.

The lower court found the facts as above indicated, and concluded therefrom that "the testator intended at the time he made his will to bequeath, by the terms of Paragraphs 'Secondly' and 'third' of his will specific Pacific Gas and Electric Company 5% bonds then in his possession."

If this conclusion is correct there was an ademption and the named legatees receive nothing under the will. On the other hand, if the bequests were general in nature they must be satisfied from the general assets of the estate.

The problem as to whether a particular bequest is specific, general, or demonstrative has many times been considered by the courts. The cases from the various jurisdictions have not been entirely consistent in their determinations. Running through the cases, however, from this and other jurisdictions, are certain fundamental concepts which have been almost universally adopted. Thus, regardless of statutory definitions (see § 161, Prob. Code) the fundamental and controlling factor is the intent of the testator at the time the will was drafted as expressed in the will considered as a whole and in light of the surrounding circumstances. (*Estate of Jepson,* 181 Cal. 745 [186 P. 352]; see cases collected 26 Cal.Jur. p. 1038, § 316; 69 C.J. p. 925, § 2095; 4 Page on Wills, Lifetime Ed., p. 101, § 1392.) The intention to be determined is whether the testator intended to give a specific thing, and that alone, or whether he intended to give a bequest that, in any event, should be paid out of his general estate. In determining this intent, the courts have held that there is a strong presumption that the bequest was intended to be general and not specific, and, in cases of doubt, the courts will presume that the testator intended to give a general bequest rather than a specific one. (*Estate of Jepson,* 181 Cal. 745 [186 P. 352]; see discussion and cases collected 4 Page on Wills, Lifetime Edition, p. 101, § 1392 at pp. 105-106; 69 C.J. p. 926, § 2096.)

In applying these rules to bequests of stocks, bonds and other securities it is quite generally held that "A gift of a certain number of shares of stock, bonds, and the like, described by the corporation, obligator, and the like, or by value or quantity, but not indicating any specific lot of such securities, is a general legacy; even if testator owned the exact number of such securities, or if such securities were in certificates of deposit of such denominations that any one would satisfy the provisions of the will. . . . Even if the bonds are described by number, the gift may be general, if the language does not show that testator intended to pass bonds which he owned at his death." (4 Page on Wills, Lifetime Ed., p. 122, § 1397.) In the footnotes the author has collected and cited cases from many jurisdictions that support the quoted rules with only

a very few cases noted as contra. (See, also, many cases collected 69 C.J. p. 930, § 2104, where the same rules are stated.) While precedents are only of doubtful value in interpreting the language of a will, unless the contents of the entire will are set forth in the opinion, the following cases are illustrative of how far the courts have gone in applying the presumption that a particular bequest is general and not specific. In *Ives* v. *Canby*, 48 F. 718, a bequest of ''$2,000 of the South Ward Loan of Chester, Pennsylvania'' by a testator who owned $10,000 of bonds known by that designation, was held to be a demonstrative, and not a specific legacy, and was therefore not adeemed by the payment of the bonds before the testator's death. The court held that, before a legacy would be construed to be specific, there must be some expression in the will from which an intention to confine the bequest to the particular securities can be inferred, and mere possession of such securities at the time the will was drawn will not make such a bequest specific.

In *Lyons* v. *Lyons*, 224 F. 772 (aff. 233 F. 744 [147 C.C.A. 510]) a testator bequeathed to his wife ''all my shares, of the capital stock of the Home Bank for Savings of Clarksburg, West Virginia, amounting in all to twenty (20) shares.'' At the time of his death he owned but twelve such shares. In spite of the use of the word ''my,'' which in some cases has been held to indicate an intent that the bequest be specific, the court held the bequest to be general.

In the case of *In re Low's Estate*, 103 N.J.Eq. 435 [143 A. 222], the testator bequeathed ''thirty (30) shares of the capital stock of the First National Bank of Toms River, New Jersey'' and ''ten (10) shares of the capital stock'' of such bank to two named legatees. In holding this was a general legacy the court stated (p. 224 [143 A.]): ''A legacy of stock, whether given in general terms or given as so many shares of the particular stock, is a general legacy wherever the testator does not expressly refer to it as 'in my possession,' 'stock owned by me,' 'my stock,' or 'in my name' at the date of the execution of the will, or does not use similar qualifying words. And the mere fact that at the date of the will it appeared that he did own stock and securities of the character bequeathed equal to or greater in value than those devised will not alone make the legacy specific unless the testator shall refer to the identical securities in his possession. [Citing cases.]

''In determining whether legacies of stock are general or

specific, the inquiry is not whether the testator may not have intended to give the specific shares then owned, but whether it clearly appears that he did so intend, for a clear intention upon the part of the testator must appear in order to make the legacy specific.''

The same result was reached in the case of *In re Blomdahl's Will*, 216 Wis. 590 [257 N.W. 152, 258 P. 168], where the testatrix at the time the will was executed owned 200 shares of Ohio Oil Company stock and by her will bequeathed 100 shares each to two named legatees. She owned no such shares at the time of her death. The trial court held the bequests to be specific. This holding was reversed, the court holding the bequests to be general. In so holding the court stated (p. 153 [257 N.W.]): ''Such a bequest is a general legacy unless the testatrix, by some qualifying words, expressly indicates a different intention and a purpose to have it a specific legacy. Under the law of this state, the circumstance of the ownership of the stock at the time of execution is not material in determining this question in the absence of the necessary qualifying words creating a specific gift. . . .

''The language used by the testatrix in framing her bequest, when read by itself, clearly carries a presumption that she intended, upon her death, to provide the named legatees each with 100 shares of the Ohio Oil Company common stock. If that language in the will is read in connection with the fact that she owned, at the time of the execution of the will, 200 shares of that stock, it might reasonably give rise to the presumption that she was giving away the stock then in her possession. But will such a presumption, if acted upon, carry out the intention of the testatrix? In order to avoid the problematical as far as possible, and as an aid to the rules of law which now apply to the interpretation and construction of wills, we hold that words specifically identifying the property and indicative of possession are necessary in the making of a specific bequest. . . .

''It is a generally accepted rule that where the language of the will is clear and unambiguous, it must control and that rule must prevail in this instance. The gift of a certain number of shares of stock without words of identification and possession is a general legacy. The absence of such words in these particular bequests brings this will within the rule accepted by this court and they must be held to be general bequests.''

There are many other cases holding that a bequest of a

stated number of shares of stock of a designated corporation without descriptive words of ownership showing an intent to give the specific shares, is general and not specific. A few such cases are *Palmer* v. *Palmer's Estate*, 106 Me. 25 [75 A. 130, 19 Ann.Cas. 1184]; *Johnson* v. *Goss*, 128 Mass, 433; *In re Snyder's Estate*, 217 Pa. 71 [66 A. 157, 118 Am.St.Rep. 900, 10 Ann.Cas. 488, 11 L.R.A.N.S. 49]; *Benson* v. *Gerhart*, 241 Ill.App. 376; *Evans* v. *Hunter*, 86 Iowa 413 [53 N.W. 277, 41 Am.St.Rep. 503, 17 L.R.A. 308]; *In re Malone's Estate*, 143 Misc. 657 [257 N.Y.S. 837].

▪ If the rules above set forth are applied to the facts here involved there can be no reasonable doubt but that the trial court incorrectly determined that the bequests here involved were specific in nature. The will, when read as a whole, discloses a clear intent on the part of the testator to care for his mother, or, in the event of her death, his brothers, and to leave the church which he attended as a child, substantial bequests. This intent to give these named legatees substantial bequests is clearly indicated by the provision that these bequests were not to be lessened or diminished by payment of inheritance taxes thereon. This interpretation does not lead to a result which will render the rest of the family destitute if the bequests are held general, because the other natural objects of his bounty, his wife and son, are adequately provided for in the disposition of his substantial estate. When these facts are considered, together with the strong presumption in favor of an interpretation in favor of a general bequest, there can be no reasonable doubt but that the bequests are general. As already pointed out, the fact that the testator owned ten of the designated bonds when he bequeathed seven of them to the named legatees is not sufficient to overcome the presumption.

The order appealed from is reversed.

Knight, J., and Ward, J., concurred.