135 Cal.App.2d 122 (1955)
Estate of KATHERINE MOORE, Deceased. SARAH ALICE McCORMICK, Appellant,
v.
SALLIE M. LOVERIDGE et al., Respondents; ANNA M. DAVIS, Cross-Appellant.
Civ. No. 20846. 
California Court of Appeals. Second Dist., Div. Three. 
Aug. 18, 1955.
 Frye & Yudelson for Appellant.
 Olson & Millikan for Cross-Appellant.
 Richard A. Perkins for Respondents.
 ASHBURN, J. pro tem. [fn. *]
 This case presents two appeals from different portions of a judgment determining heirship. With commendable brevity counsel have presented their appeals on a single agreed statement of the case.
 Decedent, Katherine Moore, made her last will, a holographic one, on April 27, 1939, and died on January 5, 1953, without having made any change in the will. She was about 80 years of age. She had been adjudged incompetent on January 13, 1947, and was never restored to competency; *126 however this impairment of legal capacity plays no part in the solution of the issues raised on appeal.
 At the time the will was made Miss Moore had two living first cousins -- Jessie M. Loveridge and Sarah Alice McCormick--and no other relatives of equal or closer degree. Jessie M. Loveridge predeceased Miss Moore, leaving two surviving children, Sallie M. Loveridge and Homan Loveridge. Sarah Alice McCormick survived the testatrix. She is not mentioned in the will, but as sole heir and next of kin would take any intestate property left by decedent; the will contains no residuary clause. In this capacity she claims there was an ademption of a certain devise made to Mrs. Loveridge and that she inherits that property. The court decided against her and she appeals from that ruling.
 The will also makes a devise to Carrie D. Griffin and Anna M. Davis, "equally divided." Neither of these persons was related to testatrix. Carrie D. Griffin predeceased her and Anna M. Davis survived her. Davis claims that this was a class gift and that she takes the entire property by survivorship. Sarah Alice McCormick asserts it was not a class gift, that it lapsed as to the Griffin half, and she, McCormick, takes that half as intestate property. The court upheld this claim and Davis appeals from that ruling.
 The will in its entirety reads as follows:
 "Los Angeles, California"
 April 27, 1939
 "I, Katherine Moore, testify that this is my latest Will and that I declare all previous Wills null and void."
 "All real estate formerly owned by Dr. William Seymour Davis and his wife, Alice Moore Davis, in Corona, California, I leave to Carrie D. Griffin and her sister, Anna M. Davis, equally divided."
 "All other real esate owned by me outside of Corona, I leave to Mrs. Jessie Moore Loveridge now residing on Lenox Ave., Oakland, California."
 "I appoint Roger S. Page of Los Angeles as the Executor, without bond, of my entire Estate--and will to him Fifteen Hundred Dollars ($1,500.00) for his legal services, closing my Estate, and for my appreciation of his kindness to me."
 "The dear ones mentioned above are precious to me beyond words--"
 "God sparing my life, I hope to add other dear friends in *127 my will as heirs, later I am blessed physically and mentally with the best of health--"
 "Katherine Moore"
 1325 Glendale Blvd.
 Los Angeles, Calif.""
 Roger S. Page also predeceased testatrix and he was not a relative. The McCormick appeal will be considered first.
 McCormick Appeal. Question of Ademption
 When the will was made testatrix owned a parcel of Corona real estate which was devised to Griffin and Davis. She also owned several parcels situated outside of Corona and answering the description of the Loveridge devise. One of them, designated in the statement as the "Spring property" was sold by decedent in April 1946 for part cash and a purchase money note and trust deed in the sum of $4,000. At the time of her death the balance of unpaid principal was $2,458.20, and there was a small amount of accrued interest. It is this sum, the Spring note, which constitutes the subject matter of the McCormick appeal. Distribution was made to the surviving children of Jessie Moore Loveridge, and, as stated above, Mrs. McCormick argues that the said sale worked an ademption, a revocation, of this devise and, as there is no residuary clause, she takes as sole surviving heir.
 This claim of ademption invokes a word of varied connotations. [1] Without undertaking a discussion of whether this case involves a true ademption question, we accept that meaning of ademption which is expressed in Estate of McLaughlin, 97 Cal.App. 485, at 488 [275 P. 875]: "An ademption of a legacy or bequest is accomplished when a change with respect to the subject matter takes place which results in the satisfaction or abolishing of the gift." And the devise to which it is to be applied here is a general one, not specific. "All other real estate owned by me outside of Corona." (See Prob. Code, 161; Estate of Marinos, 39 Cal.App.2d 1, 5-6 [102 P.2d 443]; Matter of Estate of Woodworth, 31 Cal. 595, 615; Estate of Ratto, 149 Cal. 552, 554-555 [86 P. 1107]; Estate of Painter, 150 Cal. 498, 505 [89 P. 98, 11 Ann.Cas. 760]; Estate of Jones, 60 Cal.App.2d 795, 798 [141 P.2d 764]; Estate of Blackmun, 98 Cal.App.2d 314, 317 [220 P.2d 30]; 57 Am.Jur., 1404, p. 938; 88 A.L.R. 553, 560, anno.) The case is not one of complete elimination of the subject matter of the gift from decedent's estate, as in Estate of Benner, 155 Cal. 153, 155 [99 P. 715] and Estate of Sorensen, *128 46 Cal.App.2d 35, 37 [115 P.2d 241], where it is held that a conveyance of the entire estate is necessarily inconsistent with a bequest of the property. It is a case of alteration of the testatrix' property interest, not its annihilation. The statement indicates that the property was sold for $5,000, of which only $1,000 was represented by cash and $4,000 by purchase money note and trust deed.
 [2] Section 73 of the Probate Code says: "If the instrument by which an alteration is made in the testator's interest in any property previously disposed of by his will expresses his intent that it shall be a revocation, or if it contains provisions wholly inconsistent with the terms and nature of the testamentary disposition, it operates as a revocation thereof, unless such inconsistent provisions depend on a condition or contingency by reason of which they do not take effect." And section 78: "Neither a charge or encumbrance placed by a testator upon property previously disposed of by his will, for the purpose of securing the payment of money or the performance of any covenant or agreement, nor a conveyance, settlement, or other act of a testator, by which his interest in any such property is altered, but not wholly divested, is a revocation of the disposal; but the property, subject to such charge or encumbrance, or the remaining interest therein, passes by the will." Considered independently of precedent the correct application of these statutes to the facts seems clear. Section 78 qualifies section 73 to the extent of specifying certain transactions which are not "wholly inconsistent with the terms and nature of the testamentary disposition," one of which is "a conveyance ... by which his interest in any such property is altered, but not wholly divested." Unless it can be said that the purchase money transaction wholly divested all of decedent's interest in the property there cannot be any escape from the application of section 78.
 [3] It is true that the preponderance of authority throughout the states is to the effect that a sale for part cash with a note and mortgage taken to represent the balance of the purchase price effects an ademption upon the theory that land ownership has ceased and personalty in the shape of a chose in action has been taken in its place; and the cases are based upon statutes similar to ours. (See 57 Am.Jur., 1594, p. 1093; 65 A.L.R. 632, 640, anno.; 69 C.J., 2207, p. 1007; 2215, p. 1013.) But that line of reasoning has not yet found acceptance in this state.
 Estate of McLaughlin, 97 Cal.App. 485 [275 P. 875] involves *129 the same problem but reaches a different result from the majority of rulings elsewhere. [fn. 1] It presents the obverse side of our factual picture. Testatrix there bequeathed to her husband "all of my interest in that certain mortgage against the East half" etc. "occupied by Rose, Ann, Callahan." She at that time held a note secured by trust deed [fn. 2] which answered the description. Later she accepted a conveyance of the property in satisfaction of the debt and owned that property at the time of her death. A claim of ademption was rejected by the court, although the legacy was a specific one. Intent of the testatrix was held to be controlling (pp. 488-489), as indicated by the fact, among others, that she had made no residuary bequest. [4] At page 489 it is said: "An alteration in the subject of the bequest which does not wholly destroy its identity is insufficient to adeem it. ... [5] While in California it is true that a mortgage is not regarded as a conveyance to the mortgagee of any actual title to the real property (17 Cal.Jur. 714, 19), yet it does create an interest in the property to the extent of the attachment of a lien to secure the enforcement of the obligation for the payment of which it is executed. (17 Cal.Jur. 709, 16, and p. 712, 18.) ... The only change that occurred in the character of the property was technical in its nature. She accepted a deed to the mortgaged land in lieu of her equitable lien, and in satisfaction of the debt. Since she thereafter made no change in her will, it may reasonably be inferred that she assumed the mortgaged land would be substituted for 'all of my interest in the mortgage.' " At page 492: "It is true that the acceptance of the deed to the mortgaged land did involve a complete change in the parties to the legal title, but this combined property right of debt and mortgage lien, was not wholly divested by the accepting of the deed for the exact amount of the debt. The equitable interest of the testatrix was merely enlarged to a fee title. The extinguishment of the debt was the accomplishment of an important part of the very thing which was devised, and by means of which that devise was made more certain and valuable. This *130 did not constitute an ademption of the devise or a revocation under the provisions of section 1303 of the Civil Code. It was clearly the purpose of the testatrix to convey this land to her husband by this clause of her will." [6] This case has been cited with approval by the Supreme Court in Estate of Stevens, 27 Cal.2d 108, 116 [162 P.2d 918] to the effect that "Proof of such intent is necessary to establish an ademption." Also in Estate of Cline, 67 Cal.App.2d 800, 805 [155 P.2d 390]. Though it probably represents the minority view with respect to the law of ademption as applied to its own facts (see 65 A.L.R. at 640) its reasoning seems sound and it undoubtedly represents the law of California. The principles it enunciates are equally applicable at bar.
 So far as intent is concerned it appears that Mrs. Loveridge was one of testatrix' "dear ones ... precious to me beyond words." Mrs. McCormick was barely known to her except by name. She made no residuary devise or bequest and did not mention Mrs. McCormick in the will. If she had wanted her to have anything she would have said so. The will was never changed although it was almost eight years later that incompetency intervened. The McLaughlin opinion says, concerning intention, that "ordinarily the purpose will appear by a construction of the terms of the will in the light of subsequent acts and conduct of the testator." (P. 488.) There is nothing to indicate that Miss Moore desired Mrs. McCormick (or anyone else) to have this property, or any other into which it might be converted, in preference to Mrs. Loveridge who was "precious to [her] beyond words." [7] And a "construction of a will is preferred which leaves no intestacy as to any part of the estate." (Estate of McLaughlin, supra, 97 Cal.App. at 489; see also Estate of Olsen, 9 Cal.App.2d 374, 379 [50 P.2d 70].)
 There is considerable merit in respondents' argument that the trust deed would pass under this holographic will as a part of "real estate owned by me." It is conceded that Miss Moore had no legal advice, merely the help of a friend, that both of them were unskilled in drafting wills; and the fact that testatrix was not familiar with legal terms and concepts appears from her expressed "hope to add other dear friends in my will as heirs." [8] It is fair inference that testatrix in exchanging four-fifths of the value of her property for a trust deed upon the same considered that she had aptly described it as "real estate owned by me" and that is the reason she did nothing further about that aspect of the will. This *131 view finds support in Estate of Olsen, supra, 9 Cal.App.2d 374, 379-380; Estate of Carrillo, 187 Cal. 597 [203 P. 104]
 [9] Sometimes an ademption may occur without specific intent of the testator (McLaughlin at p. 488). And that is the basis of the rulings in other states, especially New York, upon which appellant relies. For instance the opinion in In re Keeler's Estate, 225 Iowa 1349 [282 N.W. 362, 367], after discussing and disagreeing with Estate of McLaughlin, supra, says "if testatrix had known the consequences, we feel she would have changed her will." Beck v. McGillis (1850), 9 Barb. (N.Y.) 35, 55, says: "In the case before us, there is very little reason to suppose that it was the design of the testator, when he converted the lot he had devised to Mrs. McGillis, into a bond and mortgage, that the security should take a different direction. But it is the office of a judge to declare the law, strictly and truly as he finds it to be, and not to amend or improve it." But California has outgrown this ancient doctrine in favor of effectuation of the actual intent of the testator so far as it can be discerned.
 Moreover, there are aspects of California law which make the majority rule here inapplicable even if we were disposed to subordinate actual intention to one arbitrarily imputed to a testator under doctrines inherited from England a century ago. The cases reflecting the majority rule proceed, as we have stated, upon the theory that a mortgage taken as security for a purchase money note is but a chose in action, strictly personalty, representing no interest in the land, and that substitution of personal property for real property annihilates the subject of the realty gift and hence works an ademption. Indeed, Adams v. Winne (1838), 7 Paige (N.Y.) 97, 101-102, holds that this was the rule of the common law and that the New York statute (from which ours was borrowed) was not intended to change that rule. [10] Be that as it may, a mortgage in California is not a mere chose in action. As shown by the above quotation from Estate of McLaughin, supra, it does create "an interest in the property to the extent of the attachment of a lien." [11] In Childs etc. Co. v. Shelburne Realty Co., 23 Cal.2d 263, 268 [143 P.2d 697] it is said: "Under California law, a mortgagee also has a security interest in the nature of an equitable lien." [12] And a trust deed definitely does represent an interest in the land, for the title is in the trustee for the benefit of the creditor. (Bank of Italy v. Bentley, 217 Cal. 644, 655 [20 P.2d 940]; Hagge v. Drew, 27 Cal.2d 368, 376 [165 P.2d 461], *132 Snyder v. Western Loan & Bldg. Co., 1 Cal.2d 697, 70] [37 P.2d 86]; Py v. Pleitner, 70 Cal.App.2d 576, 579 [161 P.2d 393]; Mortgage Guarantee Co. v. Lee, 61 Cal.App.2d 367, 375 [143 P.2d 98].) This has been the rule here ever since 1859. (Koch v. Briggs, 14 Cal. 256 [73 Am.Dec. 651]; Bank of Italy v. Bentley, 217 Cal. at 655 [20 P.2d 940].) [13] Though the trust deed has been analogized to a mortgage, especially between debtor and creditor, whenever necessary to avoid harshness in the application of the rule, it still remains true that the title does not pass to the buyer but rests in the trustee for the primary benefit of the seller. And any rule that rests upon the assumption that the holder of a trust deed note does not have any interest in the land finds no substantial basis in California law. But that is not all.
 [14] The Legislature has taken a hand in the matter and, through passage in 1933 of section 580b Code of Civil Procedure, has forbidden a deficiency judgment for default on any purchase money paper such as a deed of trust or mortgage. And the Supreme Court has held that the effect is that "for a purchase money mortgage or deed of trust the security alone can be looked to for recovery of the debt." (Brown v. Jensen, 41 Cal.2d 193, 198 [259 P.2d 425].) [15] While the debt technically survives a default so that enforcement of collateral securities may be had (Mortgage Guarantee Co. v. Sampsell, 51 Cal.App.2d 180, 185 [124 P.2d 353]), the seller who takes back only a note secured by trust deed has nothing to which he can resort but the land and in a real sense has converted his entire ownership into a lesser interest in the real estate. The conveyance to the buyer and the purchase money trust deed cannot be divorced; they come into being simultaneously and must be viewed realistically as a single transaction. But if a segregation were possible, the same result would be dictated by section 121, Probate Code, which says: "Any estate, right, or interest in lands acquired by the testator after the making of his will, passes thereby and in like manner as if title thereto was vested in him at the time of making the will, unless the contrary manifestly appears by the will to have been the intention of the testator." [16] The vendor's interest in the property has been "altered, but not wholly divested" by a sale with trust deed back.
 A persuasive analogy is presented by Connecticut Trust & Safe Deposit Co. v. Chase, 75 Conn. 683 [55 A. 171]. In that instance a mortgage note was so drawn as to exclude personal liability. It was held that sale of devised land and acceptance *133 of the note and mortgage for the unpaid balance of the purchase price did not work an ademption. The court said in part: "The legacies given in clause 7 of the will were not adeemed by the sale of the Ft. Pleasant avenue property. The purchase price was not fully paid and by reason of the mortgage back the testatrix remained always invested with a legal title to the land. Searle v. Sawyer, 127 Mass. 491 [34 Am.Rep. 425]. The balance due her, and evidenced by the mortgage note, no one was originally under any personal obligation to pay. The declaration of trust was so referred to in the note as virtually to become a part of it, and excluded any personal liability on the part of the trustees. The testatrix could only look to the funds and property of the Riverview Heights Company, and it does not appear that it owned anything except what it acquired by the purchase from her. ..."
 "The finding shows that her dealings with the subject of the bequest have changed its form, but not its substance. The same land remains under the power of her executor. He can use it to satisfy the legacies, not indeed, in the first instance, by selling it, but by requiring its present owners, as a condition of their retaining title, to pay to him a sum sufficient to discharge them. ..."
 "A loan, strictly speaking, whether secured or unsecured, only exists when something has been lent to one who is under an obligation to return it. That may, in a secondary sense, be called a loan secured by mortgage which is merely an indebtedness of the vendee for all or part of the price of property sold, secured by a mortgage back to the vendor. Day v. Cohen, 165 Mass. 304 [43 N.E. 109]. To describe by such terms a mortgage in favor of a vendor upon land sold, when there is no one personally indebted or liable for the sum secured, would be to employ them in a sense still more unreal and remote." (Pp. 173, 174.)
 Counsel for appellant contends that our probate sections 73 and 78 (formerly Civ. Code, 1302-1304), were taken from a New York statute which had been previously construed in that state and that they are presumed to have been adopted with the New York interpretation inhering in them; they cite Estate of Dwyer, 159 Cal. 664, 677 [115 P. 235], which does so hold. But the New York decisions which had been rendered before our adoption of the statute (in 1872) do not deal with deeds of trust or with notes which carry no personal duty to pay, being collectible only out of the land itself. The New *134 York cases theretofore decided are Adams v. Winne (1838) 7 Paige (N.Y.) 97; McNaughton v. McNaughton (1866), 34 N.Y. 201; Beck v. McGillis (1850), 9 Barb. (N.Y.) 35, Brown v. Brown (1852), 16 Barb. (N.Y.) 569; Barstow v. Goodwin (1853), 2 Brad.Sur. (N.Y.) 413. [17] In this connection the following language of Coombes v. Getz, 217 Cal. 320, 330 [18 P.2d 939], is pertinent: "As to the decisions of the courts of the state of New York construing the code section of that state, which plaintiff claims furnished the model from which section 359 of the Code of Civil Procedure was patterned, it must be presumed that the court had these cases before it when it decided the case of Royal Trust Co. v. MacBean, supra [168 Cal. 642 (144 P. 139)], but refused for reasons then deemed sufficient to follow them. Under such circumstances we consider it our duty to follow the decisions of our own court construing our statute, rather than those of the state of New York upon the same subject." The same assumption is fair as to the McLaughlin case, supra, and we feel justified in following its doctrine rather than that of New York, especially as it rests upon the actual rather than an imputed intention of the testator, and upon what we consider the common sense interpretation of the statute as applied to our local concepts of mortgages and trust deeds. See also Estate of Matthiessen, 23 Cal.App.2d 608, 611 [73 P.2d 1267].
 The holding that there was no ademption of the devise to Mrs. Loveridge is not erroneous.
 Appeal of Davis. Question of Class Gift.
 The subject bequest is again quoted. "All real estate formerly owned by Dr. William Seymour Davis and his wife. Alice Moore Davis, in Corona, California, I leave to Carrie D. Griffin and her sister, Anna M. Davis, equally divided." Neither of the devisees was related to testatrix Carrie D. Griffin died before Miss Moore; Anna M. Davis survived her. The court held that this was not a class gift and distributed one-half the proceeds of this property to Davis and one-half to Sarah Alice McCormick as intestate property
 This Corona realty had been originally acquired from the earnings of Dr. William Seymour Davis, whose wife, Alice Moore Davis was a sister of testatrix; the property was in joint tenancy and passed to the wife as survivor on Dr Davis' death. She willed it to Miss Moore, who in turn made the quoted devise in favor of Carrie D. Griffin and Anna M. *135 Davis, both of whom were sisters of Dr. Davis, sisters-in-law of Alice Moore Davis,--no relation to Miss Moore. The property had been sold by testatrix before her death upon contract, part of the purchase price, $5,612.69, remained unpaid, and constitutes the subject matter of the Davis appeal. Of course, that contract did not effect an ademption or revocation (Prob. Code, 77).
 Appellant's counsel argue that, as the Corona property originated with Dr. Davis and came to Miss Moore through his wife, the devise to his two surviving sisters indicated an intention that the property should go back to the Davis family as a class gift notwithstanding the concluding phrase "equally divided." Stress is laid upon the reference to former ownership and the phrase "Carrie D. Griffin and her sister, Anna M. Davis." The normal interpretation of this devise, whether considered segmentally or as an entirety, is that testatrix has disclosed her reason for giving the property to strangers to the blood, and that the reference to Anna M. Davis as "her sister" is merely descriptive. In the face of the phrase "equally divided" there is nothing to suggest a class gift unless that intention be assumed as a basis for further argument. This the authorities in this state forbid.
 [18] The definition of a class gift, taken from Jarman on Wills, is thus stated in Estate of Murphy, 157 Cal. 63, 67 [106 P. 230, 137 Am.St.Rep. 110]: "As to a gift to a class the rule is stated as follows: 'In legal contemplation a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportions, the share of each being dependent for its amount upon the ultimate number.' " Section 29, Probate Code says: "A devise or legacy given to more than one person vests in them as owners in common, unless the will otherwise provides." And the cases do not permit a ruling that the instant will does "otherwise provide." This appeal is controlled by Estate of Murphy, 157 Cal. 63, 67 [106 P. 230, 137 Am.St.Rep. 110]; Estate of Hittell, 141 Cal. 432, 435 [75 P. 53]; Estate of Henderson, 161 Cal. 353, 360 [119 P. 496]; Estate of Sullivan, 31 Cal.App.2d 527, 529 [88 P.2d 225].
 In the Murphy case the residuary clause left realty and personalty to " 'go to, and be equally divided among the four children of my late sister Catherine F. Flynn, deceased; that is to say: I give, devise and bequeath all the rest of my *136 personal property and all my real estate of whatsoever kind and whereso[e]ver situate, share and share alike, to Timothy J. Flynn, William D. Flynn, Mary Jane Logan and Kate I. Prendergast.' " (P. 64.) William D. Flynn died before the testator, his legacy was held to have lapsed and to be distributable to his heirs as intestate property. This holding was made in reversing a distribution based on the theory of a class gift. [19] The language of the opinion is peculiarly applicable to the facts at bar. After quoting Jarman's definition of a class gift the court said further at page 67: "There is nothing on the face of the devise indicating any uncertainty in the number of persons who were to take the property, or that they were to be ascertained at a future time, or that the share of the residuary estate which the devisees were ultimately to have was to be determined as to the amount by the number of those who would survive the testator. All the persons who are to take were specifically named and the share of each was designated. In fact, it is not only quite apparent that under the rule relied on, this devise cannot be said to contain any of the elements which should characterize a gift to a class, but the plain impression which one would receive by reading the clause is that the testator intended to give to each individual an equal portion of his estate." [20] At page 68: "In determining whether a devise is to a class or to individuals great importance is attached in the solution of the question to the fact that the gift is to the devisees nominatim and that the particular share they shall each receive is mentioned, and when this appears the bequest is held to constitute a gift and devise individually as tenants in common and not as a devise to a class. (Savage v. Burnham, 17 N.Y. 561; Hornberger v. Miller, 28 App.Div. 199 [50 N.Y.S. 1085]; Rockwell v. Bradshaw, 67 Conn. 8 [34 A. 758].) But assuming, however, that the language used in the clause in question is capable of two different legal meanings resulting from the testator's devising his estate to the four children of his late sister, followed by other words of express devise to each of the children by name and in equal proportions, still this mention of them by name and a devise to them in equal shares will control the description of them as children of his deceased sister. [21] If words, which, standing alone, would be effectual to create a class, are followed by equally operative words of devise to devisees by name and in definite proportions, the law infers from the designation by name and mention of the share each is to *137 take, that the devisees are to take individually and as tenants in common and that the descriptive portion of the clause (children of a deceased sister) is intended merely as matter of identification." [22] Estate of Sullivan, supra, 31 Cal.App.2d 527 at 529: "The rule or presumption is that the gift is not one to a class where the will designates the takers by name, or identifies them by their number; and this inference will be given effect in the absence of anything to show a contrary intention. Thus, where property is expressed to be given to four named devisees, the survivors do not take the share of one who predeceased the testator. [23] Nor does the rule in avoidance of intestacy overcome the presumption that the devisees or legatees were intended to take as individuals and not as a class. (Estate of Pence, 117 Cal.App. 323 [4 P.2d 202].)"
 Appellant also complains of exclusion of certain parol evidence. [24] The Murphy case, supra, says at page 69: "It is true that these rules of construction are not absolute, but must give way to the manifest intention of the testator, which is always paramount, as that intention may be gathered from a consideration of all provisions of the will, or when the language of the will is not sufficiently clear to remove all doubt as to its intention, by a consideration of the circumstances surrounding the making of it (exclusive of the oral declarations of the testator) insofar as they may throw light on that intention. (Civ. Code, 1318; Estate of Langdon, 129 Cal. 451 [62 P. 73].)" The proffered evidence was to the effect that Josie G. Powell, who concededly advised and assisted testatrix in making the will, would testify that she explained to Miss Moore how to write a will as she did not have such knowledge; that Miss Moore outlined her testamentary plans and said she wanted all the Davis property in Corona to go to the Davises; that Josie G. Powell participated in choice of language used in the will, including that of the first paragraph; that "[i]n suggesting ... the language 'equally divided,' Josie G. Powell believed the property would all be given to the Davises"; that Miss Moore said that the property "belonged to the Davis family and her sister had given it to her only to use during her lifetime"; that in 1943 and 1944 Miss Moore refused to sell the property because it belonged to the Davis family; that her attorney Roger Page finally prevailed upon her to sell; that she said it was not true when told of Carrie D. Griffin's death which occurred in January 1951. It will be noted that the only "belief" included *138 in the offer was that of Josie G. Powell, not testatrix, and it was merely that "the property would all be given to the Davises." [25] The offer in its entirety does no more than explain the reason for the gift to nonrelatives, or at best to suggest a motive for a class gift had one been attempted, pages 70-71: "But these facts throw no more light on the The Murphy opinion again applies aptly to this case. At intention of the testator than appears upon the face of the devise itself. All that this evidence discloses is just what the clause of the will does. It furnishes a reason, generally, why the testator devised his estate to these four devisees in preference to his other nieces and nephews, and a particular reason, why, having an equal affection for all of them, he made no distinction between them in his bequest, but gave to each an equal share in his estate. Giving this evidence the greatest force that can be claimed for it, it discloses, at most, that the intention of the testator was just as compatible with the devise to these children individually as to them as a class. But this cannot aid the respondents. It would simply leave the intention of the testator as much in doubt after a consideration of these intrinsic facts as before. This evidence throws no more light on the intention of the testator than appears upon the face of the devise itself, and so we are still remitted to the application of the general rule that when in a devise a class and individuals are both mentioned and nothing appears from other clauses of the will or extraneous evidence requiring a different construction, the devise will be construed as one to devisees individually and not to them collectively--to them as tenants in common and not to them as survivors of a class."
 The Moore will is not ambiguous and the proffered evidence was properly rejected. If received it could not have changed the result.
 It appearing that there is no error in either of the portions of the judgment from which appeals have been taken, the judgment is affirmed.
 Wood, Acting P. J., and Vallee, J., concurred.
NOTES
[fn. *] *. Assigned by Chairman of Judicial Council.
[fn. 1] 1. A companion case, reported at page 481, should not be confused with it, as appellant's reply brief has done; they do not decide the same question.
[fn. 2] 2. No distinction is drawn in the decision between a mortgage and trust deed; the discussion proceeds upon the basis of a mortgage security.