241 Cal.App.2d 215 (1966)
50 Cal. Rptr. 358
Estate of CAMILLE J. EHRENFELS, Deceased.
CROCKER-CITIZENS NATIONAL BANK, as Executor, etc., Petitioner and Respondent,
v.
MRS. ALLAN F. CROCKETT et al., Objectors and Appellants; CALIFORNIA ALUMNI FOUNDATION, Objector and Respondent.
Docket No. 22690.
Court of Appeals of California, First District, Division One.
March 30, 1966.
*217 Raymond B. Haizlip, Charles Cline Moore and Haizlip, Moore & Ring for Objectors and Appellants.
Thelen, Marrin, Johnson & Bridges, Max Thelen, Jr., William F. Hoefs and Graham G. Campbell for Objector and Respondent.
No appearance for Petitioner and Respondent.
*218 MOLINARI, J.
Appellants, some of the legatees under the will of Camille Ehrenfels, appeal from the trial court's "Decree Determining Interests in Estate," which decree determined in part that the various bequests in decedent's will of shares of common stock of Standard Oil Company of New Jersey (hereafter referred to as Standard Oil) be satisfied out of shares of common stock of Diversification Fund, Inc., on the basis of 2.008 shares of the latter stock for each bequeathed share of Standard Oil stock. The sole contention of appellants is that this determination by the trial court was erroneous because the bequests of Standard Oil stock constituted general legacies and, accordingly, appellants are entitled to either Standard Oil stock in kind or to the cash equivalent of this stock as of the date of decedent's death or, alternatively, the date on which appellants could first petition the court for preliminary distribution of their stock.
Camille Ehrenfels died on April 25, 1963, leaving a will dated July 28, 1955 and two codicils dated August 9 and November 25, 1955. By the terms of articles third, fourth, and fifth of decedent's will and the November 25, 1955, codicil, decedent bequeathed varying amounts of shares of Standard Oil common stock to appellants and to other designated individuals and organizations, these bequests totalling 466 shares.[1] Many of these stock bequests were coupled with bequests of specific items of decedent's jewelry and personal property and bequests of varying sums of money. Decedent's will also contained the following provision in relation to the bequests of Standard Oil stock: "The bequests of shares of stock of Standard Oil Company of New Jersey are intended to be said shares as presently constituted. In the event that prior to my death said shares be changed by splitting or otherwise said legacies shall be satisfied with the changed shares representing and being the equivalent of the presently outstanding shares." By article tenth of her will decedent bequeathed the residue of her estate to respondent California Alumni Foundation.
After the execution of decedent's will and codicils and prior to her death various events occurred which ultimately brought about the instant controversy. These consisted of the following: On February 10, 1956 Standard Oil split its common stock on a three-for-one basis. As a result of this stock *219 split the 1,212 shares of Standard Oil stock which decedent owned on the date of the split and which she had owned at the time of executing her will and codicils were increased to 3,636 shares. On February 3, 1958, upon the petition of Virginia Williams, decedent's niece, the Kern County Superior Court adjudged decedent to be an incompetent and appointed Mrs. Williams as the guardian of decedent's estate. Pursuant to this order Mrs. Williams took possession of the assets of decedent's estate, including the 3,636 shares of Standard Oil stock. On March 10, 1961 Mrs. Williams petitioned the Kern County Superior Court for authority to exchange all of the common stock in decedent's estate, including the entire 3,636 shares of Standard Oil stock, for shares of common stock of Diversification Fund, Inc., a new mutual fund. On March 27, 1961 the court ordered the exchange and on July 27, 1961 this exchange was consummated, Mrs. Williams acquiring 9,502 shares of Diversification Fund, Inc. common stock and giving up all of the Standard Oil stock in decedent's estate. On the date of the exchange the Standard Oil stock was valued at $45.18 per share and the Diversification Fund, Inc. stock at $22.50 per share. Accordingly, each share of Standard Oil stock in decedent's estate was exchanged for 2.008 shares of Diversification Fund, Inc. stock.
On April 25, 1963, decedent died without ever having regained competency. At no time prior to her death had she consented to the exchange of Standard Oil stock for stock in Diversification Fund, Inc. On June 7, 1963 decedent's will and her two codicils were admitted to probate and Crocker-Anglo National Bank was appointed executor of decedent's will. On June 25, 1964 the executor filed in the trial court a petition to determine heirship. This petition set out the abovenoted facts and requested the court to determine what interest those persons and organizations to whom decedent had bequeathed shares of Standard Oil stock possessed in decedent's estate.[2] Specifically, the executor requested the court to determine (1) whether the bequests of Standard Oil stock were specific, demonstrative, or general; (2) whether the bequests had been adeemed; and (3) if not adeemed, the proper method of satisfaction of the bequests. Appellants and respondent filed their respective statements of interest, appellants taking the *220 position that the bequests of Standard Oil stock were general bequests and that the court should order the executor to satisfy these bequests, aggregating 1,398 shares as a result of the three-for-one stock split, by purchasing the corresponding number of shares of Standard Oil stock out of the general assets of the estate; respondent, on the other hand, took the position that the legacies of Standard Oil stock were specific bequests which had failed and that accordingly the court should order that the specific legatees of this stock take nothing under decedent's will.
After a hearing on the executor's petition, the trial court drew conclusions of law from its findings of fact to the effect that the bequests of Standard Oil stock were specific; that the guardian's conduct did not adeem these bequests; and that decedent's intent could best be carried out and given effect by distributing to the stock legatees the proceeds of the Standard Oil stock in changed form, namely by giving them the equivalent number of shares of Diversification Fund, Inc. The trial court thereupon entered its decree determining interests in estate, which decree stated that the bequests of Standard Oil stock were specific legacies to be satisfied out of the common stock of Diversification Fund, Inc.; that for purposes of this satisfaction, the valuation date of the securities was July 27, 1961[3] on which date the Standard Oil stock was valued at $45.18 per share and the Diversification Fund, Inc. stock at $22.50 per share; that each share of Standard Oil stock bequeathed "shall be adjusted for the 3-for-1 split-up of said stock and, as so adjusted, shall be satisfied with 2.008 shares of Diversification Fund, Inc." The instant appeal is from this decree.[4]
Appellants urge that the trial court's determination was erroneous on the basis that the subject legacies were general legacies and that, accordingly, appellants are entitled to the Standard Oil stock in kind or the cash equivalent thereof either as of the date of decedent's death or as of the date when appellants could first petition the court for preliminary distribution. In urging that the trial court's determination should be upheld respondent sets forth two theories upon which the trial court could properly determine that the *221 bequests of Standard Oil stock contained in decedent's will should be satisfied out of the stock of Diversification Fund, Inc. The first of these is that the Standard Oil stock bequests were specific legacies which should be traced into their changed form, the act of decedent's guardian in disposing of these shares of stock not having the effect of an ademption. As an alternative theory respondent argues that regardless of the particular characterization of these stock bequests as specific or general, decedent intended that these bequests be satisfied by tracing the Standard Oil stock to the Diversification Fund, Inc. stock for which it was exchanged.
By statutory provision, "Legacies are distinguished and designated, according to their nature" as specific, demonstrative or residuary and they include an annuity. (Prob. Code, § 161.)[5] "All other legacies are general legacies." (§ 161, subd. (5).) In the instant case we are not concerned with whether the subject legacies are demonstrative or residuary or whether they constitute an annuity. The crucial issue is whether they are specific legacies. A specific legacy is defined as the "legacy of a particular thing, specified and distinguished from all others of the same kind belonging to the testator...." (§ 161, subd. (1).) Accordingly, if the subject legacies do not come within this designation they must be deemed to be general legacies. [1] It is generally settled that a legacy which is general is satisfied out of the decedent's estate generally, that is by delivering to the legatee that portion of the decedent's estate which corresponds with the legacy or devise in value or in general description. In other words, a general legacy is not charged upon any specific property in the decedent's estate. [2] A specific legacy differs from a general legacy in that it is not intended by the decedent to be paid out of his estate generally, but is to be paid solely by delivering to the legatee the specific thing given by the will, as distinguished from a designated value or quantity. (6 Page, Wills (Bowe-Parker Rev. 1962) §§ 48.2, 48.3, pp. 7, 11, 12-13; Estate of Buck, 32 Cal.2d 372, 374 [196 P.2d 769].)
[3] Turning to the consideration of whether in the instant case the bequests of Standard Oil stock are specific or general, we note the well-established rule that in determining whether a bequest is specific or general, the fundamental and controlling factor is the intent of the testator at the time the will was *222 drafted. (Estate of Buck, supra, p. 374; Estate of Loescher, 133 Cal. App.2d 589, 593-594 [284 P.2d 902]; Estate of Cline, 67 Cal. App.2d 800, 804 [155 P.2d 390]; Estate of Jones, 60 Cal. App.2d 795, 798 [141 P.2d 764]; see § 101.) With particular regard to legacies, section 163 provides that provisions of section 161 are "in all cases to be controlled by a testator's express intention." In determining the testator's intent resort is had initially to the language of the will itself. (Gore v. Bingaman, 29 Cal. App.2d 460, 469 [85 P.2d 172]; Estate of Maloney, 27 Cal. App.2d 332, 335 [80 P.2d 998].) Moreover, the words of a will are to receive an interpretation which will give to every expression some effect (§ 102); and all parts of a will are to be construed in relation to each other (§ 103). [4] In the light of these fundamentals, therefore, the testator's "intention is to be sought for by looking to the entire will, by examining the language in question, and by determining what was meant by the words actually used. Presumptions and other rules, when necessary, must be used to supplement and aid the application of these primary rules, and not as substitutes therefor." (Estate of Williams, 113 Cal. App.2d 895, 897 [249 P.2d 348]; Estate of Jones, 55 Cal.2d 531, 535 [11 Cal. Rptr. 574, 360 P.2d 70].)
[5] "If the construction of the ... will is based upon its terms without the aid of extrinsic evidence its construction is one of law and we are not bound by the trial court's interpretation of it." (Estate of Black, 211 Cal. App.2d 75, 83 [27 Cal. Rptr. 418]; see Estate of Platt, 21 Cal.2d 343, 352 [131 P.2d 825].) [6] Where extrinsic evidence is received, but there is no conflict in the evidence, the interpretation of the instrument is likewise a question of law and the appellate court is not bound by the trial court's interpretation of it. (Parsons v. Bristol Development Co., 62 Cal.2d 861, 865-866 [44 Cal. Rptr. 767, 402 P.2d 839]; Estate of Platt, supra, p. 352; McManus v. Sequoyah Land Associates, 240 Cal. App.2d 348, 353-354 [49 Cal. Rptr. 592].) [7] Where, however, extrinsic evidence is properly received, and such evidence is conflicting and conflicting inferences arise therefrom, the appellate court will accept or adhere to the interpretation adopted by the trial court provided that that interpretation is supported by substantial evidence. (Parsons v. Bristol Development Co., supra, pp. 865-866; McManus v. Sequoyah Land Associates, supra, p. 353.)
[8] Turning to the instant case in the light of these rules involving interpretation of instruments, we conclude that *223 decedent's will is not ambiguous. The trial court did, however, receive, without objection, extrinsic evidence pertinent to the instant inquiry consisting of the following: decedent's high regard for Standard Oil Company of New Jersey by whom decedent's husband was employed for over half a century; the advice given her by the Trust Department of the Crocker First National Bank in San Francisco that she should consider selling some of her Standard Oil securities to diversify her portfolio and her response that she desired to retain the stock because of her husband's and her own relationship with the company; the fact that at the time of execution of her will she owned 1,212 shares of Standard Oil stock, more than sufficient to satisfy the bequests of this stock, and that at the time she executed the will and codicils she owned stock in 11 different companies publicly held and traded on national stock exchanges.
In Santa Clara Properties Co. v. R.L.C., Inc., 217 Cal. App.2d 840, 849-850 [32 Cal. Rptr. 333], we held that where no objection is made in the trial court to the admission of extrinsic evidence to aid in the interpretation of a written instrument, the appellate court must consider the parol evidence adduced in ascertaining whether inferences can be drawn from the written agreement and the surrounding circumstances to support the trial court's findings as to the contracting parties' intention. In the instant case, however, since the extrinsic evidence was uncontroverted, we need not consider whether inferences can be drawn from the agreement and the surrounding circumstances to support the trial court's findings as to decedent's intention, but, in view of the principles announced in Parsons and Platt, we must make an independent determination of the meaning of the provisions of the will in question.
The particular intent of testatrix which is relevant in the instant case relates to the question of whether she intended to give a specific thing and that alone or whether, on the other hand, she intended to give a bequest that in any event should be paid out of her general estate. (See Estate of Sullivan, 128 Cal. App.2d 144, 146 [274 P.2d 946]; Estate of Blackmun, 98 Cal. App.2d 314, 317 [220 P.2d 30].) [9] In determining this intent, there is a strong presumption that a bequest is intended to be general and not specific; "in cases of doubt, the courts will presume that the testator intended to give a general bequest rather than a specific one." (Estate of Jones, supra, 60 Cal. App.2d 795, 798; Estate of Jepson, 181 Cal. 745 *224 [186 P. 352]; 6 Page, op. cit. supra, § 48.1, pp. 1, 5-6.) In Buck the Supreme Court applied this rule to bequests of stocks, bonds and other securities as follows: "[A] gift of a certain number of securities described by the name of the corporation, or by value or quantity, but not indicating any particular lot of such securities, will be construed as a general bequest if there is nothing on the face of the will or in evidence of the surrounding circumstances, where admissible, to indicate that the testator intended a gift only of the securities owned by him." (P. 374 of 32 Cal.2d; see Estate of Jones, supra, p. 798.) In citing this rule, Buck, relying upon authorities from other jurisdictions, noted that where there are bequests of shares of a closely held corporation the nonpublic character of the shares bequeathed is evidence of an intent to make a specific gift.
[10] In the instant case, we have determined that the language of decedent's will, coupled with the circumstances existing at the time she executed the will, requires the conclusion that the bequests of Standard Oil stock are specific rather than general. Of major significance is the specific provision in decedent's will stating that "The bequests of shares of stock of Standard Oil Company of New Jersey are intended to be said shares as presently constituted," and the provision in the same paragraph that if, prior to her death, said shares were changed by "splitting or otherwise" the legacies were to be "satisfied with the changed shares representing and being the equivalent of the presently outstanding shares." (Italics added; see Estate of Buck, supra, p. 374, where the language deemed indicative of an intent to make a specific bequest identified the stock as shares "`now represented in my estate....'") This language, when considered in connection with (1) the circumstance that decedent, at the time she executed her will and the codicils, owned a sufficient number of shares of Standard Oil stock to satisfy the various bequests of this stock, (2) the evidence establishing that decedent had a strong affinity for Standard Oil Company of New Jersey, and (3) the fact that while decedent owned stock in 11 different publicly held corporations, the Standard Oil stock was the only stock specifically bequeathed by name, makes it reasonable to assume that when decedent executed her will she had in mind the disposition of specific shares of Standard Oil stock owned by her. (See 96 C.J.S., Wills, § 1129, pp. 890, 898-899.) Moreover, in eight of the clauses of her will wherein she bequeathed Standard Oil stock, decedent combined these bequests *225 with gifts of specific items of jewelry and personal property. [11] "A presumption that the testator intended a gift to be specific arises when the gift is closely associated in the will with other gifts to the named legatee, that are clearly specific." (96 C.J.S., Wills, § 1123, p. 889; Shriners Hospitals for Crippled Children v. Emrie (Mo.), 347 S.W.2d 198, 202.) Finally, we note that in article fifth of her will decedent bequeathed $3,000 and 26 shares of Standard Oil stock to the Girl Scouts of America, thus indicating a further intention to differentiate between her shares of such stock and the general assets of her estate represented by the general pecuniary legacy. (See Estate of Buck, supra, 32 Cal.2d 372, 375.)
In contending that the bequests of Standard Oil stock contained in decedent's will are general rather than specific, appellants rely upon the "presumption" that a bequest is general rather than specific and upon the following facts: (1) Standard Oil Company of New Jersey is a publicly held corporation whose shares are traded on a national stock exchange; (2) decedent made no reference to particular certificate numbers in bequeathing such stock; (3) decedent failed to refer in her will to the Standard Oil stock as "my shares"; (4) decedent did not bequeath all of the Standard Oil stock in her estate; (5) decedent's will provided that the stock legacies were not to be diminished by state or federal taxes; and (6) decedent's will discloses an intent to confer an "economic benefit" upon certain legatees by virtue of the fact that in making various of the stock bequests decedent suggested that they be used for certain purposes.
In the recent case of Shriners Hospitals, where the Missouri Supreme Court was called upon to determine whether bequests of various numbers of shares of stock of Ralston Purina Company (the stock of this company being publicly held and traded) were specific so that the legatees were entitled to receive the additional shares resulting from a stock split, each of the arguments made by appellants in the instant case was considered and rejected by the court. In that case, at the time of executing her will the testatrix owned 10,258 shares of common stock of Ralston Purina Company. In her will the testatrix made 40 separate bequests of a stated number of shares of Ralston Purina stock to various individuals and organizations, these bequests totalling 4,190 shares. Some of these bequests were coupled with gifts of specific items of the testatrix' personal property. In concluding that the stock *226 bequests were specific rather than general, the court first analyzed the "presumption" that bequests of corporate stock are general. In this regard the court noted that the "`judicial bias'" against specific legacies is more pronounced where ademption by extinction is in issue and pointed to the modern trend to construe stock bequests as specific where there appears some indication of an intention to give shares in the testator's ownership at the time the will is executed. (P. 201 [of 347 S.W.2d].)
With regard to the testatrix' failure to bequeath the exact total number of the shares which she owned, the court stated that this factor was neither conclusive nor convincing. As to the testatrix' failure to designate the stock bequeathed as "my stock" the court concluded that the absence of such possessory words was immaterial when the intent of the testatrix is otherwise expressed. (P. 203; accord: Friedman v. Sabot, 205 Va. 318 [136 S.E.2d 845, 849].) Similarly, the court in Shriners Hospitals rejected the argument that an intent to create general bequests arises from the inclusion of a clause requiring taxes to be paid from the residuary estate. As the court pointed out, such a clause has been held "to indicate an intention on the part of the testator to have a bequest of corporate stocks to remain intact and therefore to be a specific bequest." (P. 202.) Finally, the court found that the intent of the testatrix in expressly suggesting the specific use to which certain stock bequests should be put was highly indicative of an intent to create specific bequests.
Having concluded that the subject bequests were specific we must now determine the manner in which the bequests are to be satisfied in view of the exchange of the Standard Oil stock by the guardian during decedent's incompetency. [12] It is the general rule that a specific testamentary gift is adeemed when the specific property has been disposed of by the testator and cannot be traced to other property of the estate or when the testator has placed the proceeds of such property in a fund bequeathed to another. (Estate of Mason, 62 Cal.2d 213, 216 [42 Cal. Rptr. 13, 397 P.2d 1005]; see § 161, subd. (1).) In Mason, however, it was held that in the absence of proof that the testator intended an ademption, the sale of property specifically bequeathed in the testator's will by the guardian of the estate of the testator during an incompetency from which the testator does not recover does not adeem the specific bequest. (See also Estate of Packham, 232 Cal. App.2d 847, 848-849 [43 Cal. Rptr. 318].) In Mason the court was concerned with the *227 manner of satisfying a specific bequest where the guardian had sold the specifically devised property and had consumed a substantial amount of the proceeds from this sale to support the incompetent testatrix until her death. Under such a factual situation the Supreme Court concluded that the devisee of the specifically devised property was entitled to have his devise satisfied in full from the residue of the decedent's estate. Similarly, in Packham, where specifically devised real property was sold by the guardian of the testatrix during her incompetency for $27,000 of which about $25,000 remained in the possession of the executors of the testatrix' will, the appellate court, relying upon the reasoning in Mason, held that the specific devisee was entitled to the said sum of $25,000 and that the balance of the proceeds of the specifically devised realty was to be satisfied by the residuary legatees. The holding in the Mason and Packham cases to the effect that when the guardian of a mentally incompetent testator has sold property which is the subject of a specific gift in his ward's will, the beneficiary is awarded the proceeds of the sale has been followed by cases in other jurisdictions. These cases were cited with approval in Mason. (See Wilmerton v. Wilmerton, 176 F. 896 [100 C.C.A. 366, 28 L.R.A.N.S. 401]; Lewis v. Hill, 387 Ill. 542 [56 N.E.2d 619]; In re Estate of Bierstedt, 254 Iowa 772 [119 N.W.2d 234]; Walsh v. Gillespie, 338 Mass. 278 [154 N.E.2d 906]; Bishop v. Fullmer, 112 Ohio App. 140 [175 N.E.2d 209]; Duncan v. Bigelow, 96 N.H. 216 [72 A.2d 497]; In re Cooper, 95 N.J. Eq. 210 [123 A. 365]; and see 6 Page, supra, § 54.18, pp. 271, 272.)
We note, moreover, that the California courts prior to Mason and Packham consistently employed a tracing procedure where the testator disposed of or exchanged specifically bequeathed property prior to death. (See Estate of Stevens, 27 Cal.2d 108 [162 P.2d 918]; Estate of Cooper, 107 Cal. App.2d 592 [237 P.2d 699]; Estate of McLaughlin, 97 Cal. App. 485 [275 P. 875]; Estate of Cline, supra, 67 Cal. App.2d 800; Estate of MacDonald, 133 Cal. App.2d 43 [283 P.2d 271]; Estate of Helfman, 193 Cal. App.2d 652 [14 Cal. Rptr. 482]; Estate of Moore, 135 Cal. App.2d 122 [286 P.2d 939].) Of these cases, McLaughlin, Cline and Helfman expressly noted that such a tracing procedure has been followed in cases involving an exchange of stock for stock. In Mason the Supreme Court speaking of the ademption of a specific bequest noted that an ademption takes place "when the specific property has been disposed of by the testator and cannot be *228 traced to other property in the estate. ..." (Italics partly added; p. 216.) In 6 Page, op. cit. supra, the authors, citing some of the cases in the other jurisdictions relied upon in Mason, state that "it is generally held in the United States that the sale, collection, and the like by the guardian does not adeem a specific devise or legacy; and that the devisee or legatee takes the proceeds as far as they can be traced." (Italics added; p. 272.)
[13] It is apparent that Mason does not prohibit the guardian of a person who has become incompetent after making his will from selling, exchanging or reinvesting, pursuant to lawful authority, property which is the subject of a specific devise or legacy under the will. While the guardian's act in so doing does not adeem the specific devise or legacy it relegates the devisee or legatee to taking the proceeds of the sale as far as they can be traced. In the instant case the proceeds of the Standard Oil stock specifically bequeathed consist of the Diversification Fund, Inc. stock for which the Standard Oil stock was exchanged and into which it can be readily traced. Accordingly, the determination made by the trial court that the various bequests of Standard Oil stock, adjusted for the stock splits, be satisfied out of the shares of the common stock of Diversification Fund, Inc., on the basis of 2.008 shares of the latter stock for each bequeathed share of Standard Oil stock was proper.
The decree is affirmed.
Sullivan, P.J., and Sims, J., concurred.
Appellants' petition for a hearing by the Supreme Court was denied May 25, 1966.
NOTES
[1] The parties as well as the court below have considered and treated these bequests as aggregating 460 shares. Of the total shares bequeathed, 222 were bequeathed to appellants and the remaining 244 to nonappealing legatees.
[2] The petition also noted that, pursuant to the stipulation of the various interested parties and the January 27, 1964 order of the court, the executor had acquired and currently held 1,380 shares of Standard Oil stock, this purchase apparently having been made in case the trial court ordered that the Standard Oil stock bequests be satisfied in kind.
[3] This was the date on which the exchange of the Standard Oil stock for Diversification Fund, Inc. stock was consummated.
[4] A cross-appeal, filed by respondent on the theory that the exchange of the subject stocks had caused an ademption, has been dismissed by respondent.
[5] Unless otherwise indicated all statutory references are to the Probate Code.