*77
 
 McCABE, P. J.
 

 Y. L. Creed married Flossie Creed in 1919. Respondent Betty Knoll is the sole surviving child of the marriage. Flossie Creed died in 1942. During the marriage, Y. L. Creed was employed as a contractor and acquired property, including the commercially developed real property hereinafter described as the Bell property. In 1943, Y. L. Creed married appellant Pauline, a divorcee and a long time acquaintance. After the marriage to Pauline, Y. L. Creed was in retirement except for a few jobs in which he was not the contractor. The married couple lived off the income from Y. L. Creed’s Bell property. Pauline did inherit some money. A home was purchased which at the time of Y. L. Creed’s death was in joint tenancy.
 

 In 1949, respondent Betty Knoll married Melvin Knoll. There were four daughters of this marriage, thus, granddaughters of Y. L. Creed.
 

 By a holographic will, dated April 9, 1957, Y. L. Creed specifically devised the Bell property to his daughter, Betty Knoll, in trust for his four grandchildren with a residual clause in favor of Pauline, his wife. By a second holographic will, dated April 8, 1961, Y. L. Creed provided: “I hereby give, devise and bequeath to Betty Lou Knoll my real property located at 6215 and 6225 Atlantic Blvd., Bell, Calif. This property to be held in trust by her, for and in behalf of her children, to wit, Valerie, Melisse, Denise and Lori, and any other child that may be born to her, until the youngest child arrives at the age of 21 years.
 

 <
 
 l
 

 “The rest of my property and estate to go to my wife Pauline B. Creed.” In the 1961 will, Melvin Knoll was named as executor of the will. In May 1963, Mr. Creed mailed the 1961 will to his daughter, Betty Knoll. Pauline did not know of any will until after the death of Mr. Creed.
 

 After the receipt of the 1961 will, Melvin and Betty Knoll became concerned with the estate and inheritance tax consequences of such a bequest and suggested the Bell property be transferred to a corporation and the stock of the corporation transferred to the children in tax-free
 
 inter vivos
 
 gifts. An attorney was retained to form the corporation. In mid-1963, Mr. Creed and Pauline visited the Knolls at their Lake Tahoe home and there Mr. Creed allegedly executed the Articles of Incorporation which were thereafter filed on September 19, 1963. The corporation was authorized to and did issue in escrow 465 shares to Y. L, Creed, In January 1964, four
 
 *78
 
 equal lots of 13 shares of the stock of the Y. L. Creed Corporation were transferred by Mr. Creed to each of the four grandchildren, which aggregate 52 shares had an approximate value of $30,000. Thereafter, 5 additional shares were transferred to each of the grandchildren, which 5 shares had an approximate value of $3,000. Although these transfers of stock were discussed at director’s meeting's of the Y. L. Creed Corporation, Pauline Creed was not present.
 

 In December 1964, Y. L. Creed died. His assets were inventoried and appraised reflecting 393 shares of Y. L, Creed Corporation at a valuation of $230,410.53. The balance of his estate including joint tenancy property owned by the decedent and his wife amounted to over $50,000.
 

 Decedent’s widow contests the right of the grandchildren’s mother, as testamentary trustee, to the distribution of the Bell property upon the legal principle that the devise was specific and ademption occurred by the
 
 inter vivos
 
 transfer of the Bell property to Y. L. Creed Corporation. Since she is the residual legatee, she urges she is entitled to the distribution of the 393 shares of stock of that corporation in the decedent’s estate. The trial court found contrary to the widow’s contention and awarded the 393 shares of the corporate stock to the decedent’s daughter in trust for the grandchildren.
 

 The trial court found the sole asset of the corporation was the Bell property and a corporate bank account; after the transfer decedent dealt with and managed the Bell property and the income therefrom as though no transfer of it had been made to the corporation; decedent intended during his lifetime to give all the stock to his grandchildren by such annual amounts as would avoid gift taxes; decedent was the
 
 alter ego
 
 of the corporation; by deeding the Bell property and the corporation decedent did not intend to divest himself of ownership of the Bell property which had been his separate property; decedent intended that all rights and indicia of ownership in and to the Bell property be given to his daughter, in trust, for the benefit of his grandchildren; there was no ademption; the corporate bank account was the separate property of decedent and all the residue of the estate belonged to the widow.
 

 By her postulations on this appeal, the widow asserts the trial court erred (1) by gathering the intent of the decedent from the evidence adduced rather than from the will itself; (2) by finding there was no ademption for the property was “sold” to the corporation and the remaining shares of stock
 
 *79
 
 were merely a change of form of decedent’s interest in the-Bell property.
 

 These issues must be resolved against the appellant. It has long been recognized that even where the particular subject of the specific devise no longer exists as an asset in the testator’s estate, the specific devise is not wholly extinguished if it is merely changed in form.
 
 (Estate of Cooper,
 
 107 Cal.App.2d 592, 595-598 [237 P.2d 699];
 
 Estate of Helfman,
 
 193 Cal.App.2d 652, 655-659 [14 Cal.Rptr. 482]; cf.
 
 Estate of Stevens,
 
 27 Cal. 2d 108, 115 [162 P.2d 918].) The rationale behind these cases is that a change in form will not work an ademption unless the testator so intended.
 

 This doctrine has become firmly established and has been extended to apply to substantial changes of the form in which the property rests at the time of death. In
 
 Estate of Mason,
 
 62 Cal. 2d 213 [42 Cal.Rptr. 13, 397 P.2d 1005], the testatrix devised her home to her son, but then became incompetent. Her guardian with court approval sold the home and used all but a small portion of the $21,000 proceeds for her support until she died. The son claimed not only the remaining proceeds, but also all of the residuary legacies, amounting to $6,808. The Supreme Court held at p. 215: “ ‘Ademption of a specific legacy is the extinction or withdrawal of a legacy in consequence of some act of the testator equivalent to its revocation, or clearly indicative of an intention to revoke. The ademption is effected by the extinction of the thing or fund bequeathed, or by a disposition of it subsequent to the will which prevents its passing by the will, from which an intention that the legacy should fail is presumed.’ (Citations.)
 
 A change in the form of property subject to a specific testamentary gift will not effect an ademption in the absence of proof that the testator intended that the gift fail.
 
 (Citations.) ” (Italics added.)
 

 Thus, while an ademption might be effected when the specific property subject to the will has been sold and the proceeds cannot be traced to other property in the estate, see Probate Code, section 161, subdivision (1);
 
 Estate of Mason, supra,
 
 62 Cal.2d 213, 216, no such result may be reached in the absence of an intent to adeem. (See
 
 Estate of Goodfellow,
 
 166 Cal. 409, 415 [137 P. 12];
 
 Estate of Newsome,
 
 248 Cal.App.2d 712, 714 [56 Cal.Rptr. 874] as modified;
 
 Estate of Holmes,
 
 233 Cal.App.2d 464 [43 Cal.Rptr. 693].)
 

 In
 
 Estate of Ehrenfels,
 
 241 Cal.App.2d 215 [50 Cal.Rptr. 358] the testatrix had bequeathed all of her “Standard Oil
 
 *80
 
 stock as presently, constituted” to a legatee.. Thereafter the stock was exchanged for a diversified mutual fund. The court reaffirmed that in the instance in which the proceeds could be traced to assets remaining in the testator’s estate there was no ademption. (See also
 
 Estate of Peckham,
 
 232 Cal.App.2d 847, 848-849 [43 Cal.Rptr. 318].)
 

 It is clear from the terms of the will decedent intended to specifically devise the Bell property to his daughter, in trust, for the benefit of his grandchildren. The widow would have us decide that the intent as ascribed in the will controls all the future of the specifically described property: if the estate of the decedent at the date of death did not include the Bell property, it was decedent’s intent to adeem the specific bequest. We cannot so hold. The intent to adeem or not to adeem must be manifested after the signing of the will admitted to probate. It is the extinguishment of the property in the testator’s estate, and the surrounding circumstances of this event, which occur after the signing of the will that must be interpreted and decided upon. The only procedure by which a determination of the testator’s intent can be made is to admit extrinsic evidence upon it. It was not error for the court to admit evidence of the formation of the incorporation, the transfer of the title of the Bell property to the corporation, the issuance of the stock, the
 
 inter vivos
 
 transfer of some shares owned by decedent to his grandchildren, the manner of control and operation of the corporation by decedent, the use of the income from the real property, and like evidence to show the state of mind of the decedent.
 

 The rule of law in California as the above cited cases reflect is that a mere change of form of the property described as a specific bequest in the will does not
 
 ipso facto
 
 constitute an ademption.
 

 Judgment affirmed.
 

 Kerrigan J., and Tamura J., concurred.