708 So.2d 1302 (1998)
SUCCESSION OF Thelma S. Prescott HUGUET.
No. 96 CA 2663.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*1303 James E. Toups, Baton Rouge, for Plaintiff-Appellee Ann Garner McCulloch.
Paul S. West, Baton Rouge, William P. Stubbs, Jr., Lafayette, for Defendant-Appellant Wayne Brogdon, Executor.
Before LOTTINGER, C.J., and SHORTESS, WHIPPLE, FOGG, and KUHN, JJ.
SHORTESS, Judge.
Does the exchange of immovable property for interest in a partnership revoke a testamentary legacy of the testator's "right, title and interest" in the immovable property? The executor of the succession of Thelma S. Prescott Huguet brought this declaratory judgment action seeking an answer to this question. The trial court answered this question affirmatively, using the following syllogism:

A sale equals a revocation.

An exchange equals a sale.
Therefore, an exchange equals a revocation.
The executor appeals, contending the trial court's logic is flawed because the minor premise, i.e., that an exchange equals a sale, is legally incorrect.

FACTUAL BACKGROUND
Thelma S. Prescott Huguet died August 20, 1994, leaving as her only descendants two daughters, Grace Garner and Ann Garner McCulloch, and a grandson, Wayne Brogdon, who is Grace Garner's son. On May 14, 1992, Huguet executed a last will and testament that contained certain specific bequests to her three descendants and left the remainder of her estate to Garner and McCulloch. The specific bequest at issue herein was to Brogdon of "all of my right, title and interest in and to ... [m]y undivided interest in that certain one hundred eighty (180) acre tract of land located in West Baton Rouge Parish, Louisiana...."
On December 23, 1993, Brogdon and Huguet formed a limited partnership named Brogdon Development, A Louisiana Partnership in Commendam. Brogdon was the general partner; Huguet was the limited partner. Brogdon contributed $5,000.00 to the partnership and owned 1.64% thereof. Huguet exchanged her interest in the West Baton Rouge Parish property for a 98.36% interest in the partnership. On the same date, Huguet donated to Brogdon a 6.55% interest in the partnership, valued at $20,000.00. She made an identical donation on January 3, 1994. Thus, at the time of Huguet's death, she owned 85.26% of the partnership, and Brogdon owned 14.74%.
The parties stipulated to the facts stated above. Other "facts" set forth and argued in Brogdon's brief included: (1) the partnership was created to give Brogdon immediate control of the property and minimize the loss of any federal estate tax credit, (2) no rental, royalty, or other income was being derived from the property, and (3) the property was unimproved and remained so during the existence of the partnership. The brief also implies Huguet intended to continue making donations of partnership interest to Brogdon. None of these additional "facts" set forth in Brogdon's brief can be considered by this court, however, because they are not part of the record on appeal.[1]
Brogdon is the testamentary executor of Huguet's will. Brogdon contends that his duty as executor is to fulfill the testatrix's intent, and that her intent was to give all her *1304 interest in the West Baton Rouge Parish property to Brogdon, "regardless of in what form that interest was held." McCulloch disagreed, contending the bequest was a lapsed legacy because Huguet owned no interest in the property when she died. Because of these conflicting interpretations, Brogdon filed this declaratory judgment action.

LEGAL ANALYSIS
Brogdon contends the trial court erred in two respects: (1) in finding an exchange equals a sale and thus revokes a legacy under Louisiana Civil Code article 1695; and (2) in failing to consider Huguet's intent.

Does an exchange equal a sale?
An exchange and a sale are clearly two different types of contracts. The articles on sale are found in Title VII of the Civil Code, while the rules for exchanges are found in Book III, Title VIII. Exchange is defined in article 2660 as "a contract, by which the parties to the contract give to one another, one thing for another, whatever it be, except money; for in that case it would be a sale." (Emphasis added.) The Code provides in article 2667, however, that the general rules of sale apply to the contract of exchange.[2]
McCulloch relies on article 2667 to support the minor premise in the trial court's syllogism, i.e., that an exchange equals a sale. We agree with Brogdon's contention, however, that this case cannot be resolved so simplistically. An exchange is not equal to a sale. The Code makes them separate and distinct legal concepts, so the trial court's syllogism must fall.
The failure of the trial court's syllogism, however, does not resolve whether Huguet's legacy to Brogdon lapsed when she exchanged the property for a partnership interest. To answer this question, we must examine the codal and jurisprudential guidelines for interpretation of wills and partnership law regarding ownership of real property.

Interpretation of wills
Our Civil Code provides generally that in interpreting a will, the court must first try to ascertain the testator's intent, without departing from the proper signification of the will's terms.[3] The disposition should be understood in the sense in which it can have effect;[4] and when the intent cannot be ascertained from the terms used by the testator, the court may look to all circumstances that may aid in discovering his intent.[5] In Succession of Blakemore, the supreme court explained: "The testator's intention is his will. This is the first rule of interpretation, to which all others are reduced. The intention must be enforced as far as it can be done legally."[6] If the will contains no ambiguity, however, the will must be enforced as written without reference to outside information regarding the testator's intent.[7]
Brogdon contends the trial court ignored Huguet's intent. McCulloch argues, on the other hand, that the will is unambiguous and thus the court did not need to determine Huguet's intent. The answer to this question turns on whether Huguet owned any right, title, or interest in the West Baton Rouge Parish property when she died.

Partnership law
A partnership is a juridical person, distinct from its partners.[8] It has its own domicile, its own patrimony, the right to sue and be sued in its own behalf, and the capacity to make donations and to receive legacies and *1305 donations.[9] The entity theory, i.e., the idea that a partnership is a distinct legal entity from the individuals composing it, has been recognized in our jurisprudence since 1848.[10] Our supreme court explained how this concept affects the ownership of property in Smith v. McMicken:
The partnership once formed and put into action, becomes, in contemplation of law, a moral being, distinct from the persons who compose it. It is a civil person which has its peculiar rights and attributes.... Hence, therefore, the partners are not the owners of the partnership property. The ideal being thus recognized by a fiction of law, is the owner; it has a right to control and administer the property, to enable it to fulfil[l] its legal duties and obligations; and the respective parties, who associated themselves for the purposes of participating in the profits which may accrue, are not the owners of the property itself....[11]
Brogdon contends the exchange herein was a "mere formal change" in the legacy and thus did not revoke the legacy. He cites two common law cases, In Re Estate of Creed[12] and Pepka v. Branch,[13] to support this contention. In each of those cases, the testator donated real property to a corporation, and the court found the donation was a mere change in the form of the property that did not revoke a legacy. While this may be true in common law jurisdictions that have not adopted the entity theory, the entity theory applies to both partnerships and corporations in Louisiana.[14] In Louisiana, when the title to real property is transferred to a partnership or corporation, a real change in ownership, not a mere change in form, occurs, and the partners or shareholders no longer have any direct ownership interest in the property. Thus, when the exchange was made, the West Baton Rouge property left Huguet's hands, and she no longer had any ownership interest in it.

Should the trial court have determined Huguet's intent?
The proposition is so clear as to require no citation of authority that one cannot donate or give away what one does not own. A testamentary bequest is a donation. At the time of her death, Huguet did not own any right, title, or interest in the West Baton Rouge Parish property, and thus she could not donate it to Brogdon or to anyone else. There is no obvious ambiguity in the testamentary bequest to Brogdon of all Huguet's right, title, and interest, and thus the trial court did not need to resort to extrinsic evidence to determine Huguet's intent. This legacy fell when the partnership became the owner of the property, and thus the trial court reached the correct result, albeit for the wrong reasons.

Application of Civil Code article 1695
The parties have gone to great lengths to argue whether Civil Code article 1695 is applicable herein. The differences in the French Civil Code and the Louisiana Civil Code are interesting, and it is most curious that the Code Napoleon of 1804 specifically listed exchange as an act that revoked a testamentary legacy, while the Projet de Government of 1800 and the 1808, 1825, and 1870 Civil Codes listed only donations inter vivos and sales. We need not reach this issue, however, in light of our previous conclusion that the legacy lapsed.

*1306 CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court declaring that the bequest by Huguet to Brogdon of all her right, title and interest in that certain 180-acre tract of land located in West Baton Rouge Parish, Louisiana, lapsed as a result of the exchange of the property for interest in Brogdon Development, a Louisiana Partnership in Commendam. Brogdon, as executor of the estate of Thelma S. Prescott Huguet, is cast for all costs of appeal.
AFFIRMED.
FOGG, J., dissents and assigns reasons.
LOTTINGER, C.J., dissents for the reasons assigned by FOGG, J.
FOGG, J., dissenting.
Huguet executed a will on May 14, 1992; therein, she left to Brogdon "all of my right, title and interest in and to ... [m]y undivided interest in that certain one hundred eighty (180) acre tract of land located in West Baton Rouge Parish, Louisiana...." On December 23, 1993, Brogdon and Huguet formed a limited partnership named Brogdon Development. Huguet exchanged her interest in the West Baton Rouge Property for a 98.36% interest in Brogdon Development. Brogdon contributed $5,000 in cash and received the remaining 1.64% of the partnership. Brogdon was named as the general partner and given broad powers to manage the partnership; Huguet was the sole limited partner.
On the same day that the partnership was formed, Huguet assigned to Brogdon 6.55% in Brogdon Development. This donation was valued at $20,000, the maximum amount that Huguet could give to Brogdon without federal gift tax consequences. See I.R.C. § 2513. Two weeks later, on January 3, 1994, Huguet assigned an additional 6.55% interest in Brogdon Development valued at $20,000 to her grandson thereby reducing her ownership in Brogdon Development to 85.26% and increasing Brogdon's interest to 14.74%. Approximately seven months later, on August 20, 1994, Huguet died.
I agree with the majority's determination that an exchange is not a sale for purposes of LSA-C.C. art. 1695. Therefore, the legacy did not fall upon the exchange of the property for an interest in the partnership due to the application of that article. Upon making this determination, the salient issue remaining is whether the mere change in the form of the property revoked this legacy. In ascertaining the testator's intent, without departing from the proper signification of the will's terms, as required by LSA-C.C. art. 1712 et seq., it is clear that Huguet intended to bequeath to her grandson her interest in the West Baton Rouge Property. It is also abundantly clear that in exchanging that property for an interest in the partnership Huguet's intent remained the same. This is apparent because (1) Huguet and Brogdon were the only partners in the partnership, (2) immediately upon forming the partnership, Huguet gave Brogdon an additional 6.55% interest, the most she could donate to him at that time without federal tax consequences, (3) two weeks later and after the turn of the new year, Huguet donated another 6.55% interest to Brogdon, and (4) those involved in the testamentary property did not change and remained limited to Brogdon and Huguet. Also, in this situation, the testamentary property effectively remained in the hands of the testator as it was held by a partnership in which the testator held a 85.26% interest. I believe the use of a partnership to manage the 180 acre tract was insufficient to cause this legacy to lapse in direct contravention of the intent of the testator. Therefore, for the foregoing reasons, I respectfully dissent.
NOTES
[1] See State ex rel. Guste v. Thompson, 532 So.2d 524, 527 (La.App. 1st Cir.1988).
[2] Specific rules regarding completion of the contract of exchange and rescission of an exchange are found in articles 2661-2666.
[3] La. C.C. art. 1712.
[4] La. C.C. art. 1713.
[5] La. C.C. art. 1715.
[6] 43 La. Ann. 845, 9 So. 496, 497 (1891) (emphasis added).
[7] Succession of Williams, 608 So.2d 973, 975 (La.1992).
[8] La. C.C. art. 2801.
[9] See Comment (e) to La. C.C. art. 2801.
[10] Comment, Louisiana's New Partnership Provisions: A Review of the Changes and Some Continuing Problem Areas, 42 La. L.Rev. 1429, 1433 (1982).
[11] 3 La.Ann. 319, 322 (1848).
[12] 255 Cal.App.2d 80, 63 Cal.Rptr. 80 (4th Cir. 1967).
[13] 155 Ind.App. 637, 294 N.E.2d 141 (2d Dist. 1973).
[14] See Succession of Maryland, 94-0501, p. 4 (La.App. 1st Cir. 3/3/95), 653 So.2d 8, 11, in which this court explains the entity theory as applied to corporations; see also Comment, Louisiana's New Partnership Provisions, 42 La. L.Rev. at 1432-1434, wherein the difference between the civilian entity concept and the common-law aggregate concept is explained.