| TOBIAS, Judge.
In this succession case, the appellant, Michael Costello (“Mr. Costello”), appeals a judgment entered against him for $7,650.00, which amount represents one-half of an alleged real estate brokerage commission to be paid to White Properties, Inc. (“White Properties”) for obtaining an offer to purchase succession property. The trial court ordered that the succession pay the other one-half of the commission. The succession has answered the appeal, asking this court to assess the appellant with the entire amount of the commission. We permitted White Properties to file an ami-cus curiae brief to address the propriety of its commission. For the reasons set forth below, we reverse the trial court and vacate the judgment.
This is the first of three appeals presently before this court arising out of the Succession of Joseph M. Costello, III.[1] Joseph M. Costello, III, died testate on 23 April 1997, survived by his mother and three brothers; Loyola University is named as the residuary legatee in the decedent’s testament. The testament named the appellant, Mr. Costello, and Ashton Hardy (“Mr. Hardy”) as co-executors; the latter is an attorney-at-law who previously represented the decedent in his business affairs and who had drafted the testament.
| {Among the decedent’s assets was a boathouse on the lakefront, built on land leased from the Board of Commissioners of the Orleans Levee District. At some time in 1997, the succession, through its co-executor, Mr. Hardy, listed the leasehold interest in the boathouse with White Properties.[2] It is alleged that the listing agreement declared that White Properties would receive a commission of 6% upon finding a ready and willing buyer, regardless of whether the sale was consummated. The listing agreement is not in the record on appeal.
On 9 July 1997, White Properties received an offer for $225,000.00, and Mr. Hardy unilaterally accepted the offer. On 18 July 1997, Mr. Hardy apparently filed a petition for court authority to sell the leasehold interest.[3] Mr. Costello objected to the sale alleging that he had an interest in the property as a legatee under the testament. Mr. Costello also challenged the jurisdiction of the court. The succession representative, Mr. Hardy, opposed Mr. Costello’s positions on behalf of the succession. These matters were litigated to judgment rendered on 14 September 1998 in favor of the succession. By this time, the first offer to purchase had expired. At some point during the litigation, Mr. Costello resigned as co-executor.
A second offer to purchase the leasehold property was received by White Properties *535 in 1999 for $190,000.00. Mr. Hardy filed a petition for authority to sell the leasehold interest for the sum of $190,000.00, less the seller’s pro-rata share of real estate taxes, closing costs, and the seller’s payment of the commission of 6% to White Properties. Although the petition for authority to sell claims the agreement to purchase or sell is attached, the agreement is not in the record before 13us. A notice to sell was published, and on 20 April 1999, the trial court approved the sale. The sale closed on 13 May 1999.
On 5 April 1999, White Properties filed a proof of claim with the succession representative seeking $15,300.00, which represented a 6% real estate brokerage commission, that White Properties alleged was owed for the first offer to purchase the leasehold for $225,000.00. In making this claim, White Properties relied upon the listing agreement signed by Mr. Hardy.
Mr. Hardy filed a petition for authority to pay administrative expenses and debts of the succession on 9 July 1999, as reflected in the proposed Fourth Tableau of Distribution. The claim of White Properties for $15,300.00 was included therein. Loyola University opposed the payment of the commission, arguing that because of Mr. Costello’s assertion of ownership of the property as a legatee under the testament, the sale of the boathouse was an impossibility until the trial court ruled against him in September 1998. It also pointed out that White Properties received a 6% commission on the May 1999 sale for $190,000.00.
The succession representative moved to have Mr. Costello joined as a third party defendant to assert a claim for indemnity and/or contribution against him for the commission sought by White Properties; the motion was granted. On 14 October 1999, the trial court rendered judgment, ordering that the White Properties’ commission of $15,300.00 be homologated and that the commission be paid by both the succession and Mr. Costello in equal shares of $7,650.00. The trial court found that “the lost commission as a result for the failed sale, was incurred due to the action of both parties.”
In his first assignment of error, Mr. Costello argues that the trial court should not have homologated the tableau of distribution seeking authority to pay the 14$15,300.00 commission for several reasons, First, he contends that the listing agreement with White Properties was invalid because it was signed by only one of the two executors, in violation of La. C.C.P. art. 3192. He also argues that the proof of claim submitted by White Properties was deficient because a copy of the listing agreement was not attached, in violation of La. C.C. art. 3245(C). Finally, he argues that La. C.C.P. art. 3281(B) prohibits the claim.
Article 3192 of the Code of Civil Procedure provides:
If there are several succession representatives, all action by them shall be taken jointly, unless:
(1) The testator has provided otherwise; or
(2) The representatives have filed in the record a written authorization to single representative to act for all.
When the listing agreement was signed, Michael and Mr. Hardy were the co-executors of the succession. Therefore, Mr. Hardy did not have the authority to unilaterally enter into the listing agreement with White Properties without written authorization from Mr. Costello filed into the record, or his consent. Neither existed in this matter. Consequently, the succession is not liable for the debt claimed by White Properties.
*536 We find further support for this conclusion in La. C.C.P. art. 3286, which provides:
A succession representative who desires to list succession property for sale shall file a petition to which shall be annexed the proposed listing agreement, which shall contain a provision that any offer to purchase submitted under such agreement to the succession representative shall be subject to the suspensive condition that the court approve the proposed sale. The court shall render an order, ex parte, authorizing the execution of the listing agreement by the succession representative when it considers such agreement to be in the best interest of the succession.
|KAs far as we can discern from the record, Mr. Hardy signed the listing agreement on behalf of the succession without seeking prior court. Therefore, the listing agreement is invalid and the succession is not responsible for the commission that White Properties claims it is owed.[4]
Finally, La. C.C.P. art. 3281(B) provides that a succession representative may execute, without prior court approval, an agreement to sell succession property at a private sale, subject to the suspensive condition that the court approves the proposed sale. If Mr. Hardy executed the first agreement to sell the leasehold interest for $225,000.00 without this condition in the contract, he may well have breached his fiduciary duty to act as a prudent administrator. However, because the agreement is not in the record, we decline to address this assignment of error.
Finally, we reject the argument of White Properties that it is entitled to a brokerage commission earned from the first offer to purchase the property. In making this argument, reliance is made upon Eanes v. McKnight, 262 La. 915, 265 So.2d 220 (1972) and Prescott Murphy Realty, Inc. v. Ward Peters Investment Co., Inc., 340 So.2d 646 (La.App. 2 Cir.1976). While these cases hold that a real estate agent earns a commission if it procures a buyer who is ready, willing, and able to purchase on the vendor’s terms, even if the sale is not consummated, neither case involves a succession. The code articles at issue are not permissive and the evidence is clear that the parties were not in compliance with the law. Therefore, we reject the arguments.
|fiIn its objection to payment of the commission, Loyola University states that White Properties received a 6% commission when the leasehold interest in the boathouse was sold in May 1999. We also note that the petition for authority to sell the leasehold interest for the sum of $190,000.00 states that the succession would pay the real estate commission of 6% to White Properties. However, the payment of this commission is not reflected in the record.
Because we find that the trial court erred in ordering that the commission be paid on the first offer to purchase, we do not address the succession’s answer to the appeal.
Based on the above, we hold that the trial court -erred in homologating the proof of claim by White Properties in the amount of $15,300.00 and that neither the succession nor Mr. Costello are responsible for their share of the alleged debt. Therefore, we reverse the trial court and vacate the judgment; each party shall bear its own costs.
*537 REVERSED; JUDGMENT VACATED.

. See also Nos. 2000-CA-2672 and 2001-CA-0184.

. Mr. Costello, the co-executor, did not sign the listing agreement.

.The appellate record does not contain any pleadings filed before November 1998; these facts are derived from the proof of claim filed by White Properties in April 1999.

. The proof of claim is also deficient since the listing agreement was not attached to it as required by La. C.C.P. art. 3245(C): "If the claim is based on a written instrument, a copy thereof with all endorsements must be attached to the proof of claim.”