TOBIAS, Judge.
This is the second of three appeals before us arising out of the Succession of Joseph M. Costello, III.[1] Joseph M. Costello, III, died testate on 23 April 1997, survived by his mother and three, brothers; Loyola University is the residuary legatee in the decedent’s testament. The testament named Michael Costello (“Mr. Costello”) and Ashton Hardy (“Mr. Hardy”) as co-executors; Mr. Hardy is an attorney-at-law who previously represented the decedent in his business affairs and who had drafted the testament.
As part of his estate, the decedent owned several radio stations. In 1991, he formed WRNO Worldwide, Inc., to own WRNO Worldwide, a shortwave radio operation, and KXOR, Inc., to own KXOR-FM, a radio station that broadcasts in the Thibodeaux, Louisiana area. It is undisputed that the decedent owned 100 percent of the stock of the two corporations.
At issue in this appeal is the interpretation of a provision of the testament, paragraph 3.8, which provides:
3.8 If my brother, Michael Costello, shall survive me, then I give to and confirm in my brother, Michael Costello, for his lifetime, without the necessity of inventory or other security, a usufruct of the WRNO building and all contents located at 4539 1-110?, Service Road, West Me-tairie, Metairie, Louisiana.
On 1 February 2000, Mr. Hardy filed a petition for partial judgment of possession, seeking to place Mr. Costello into possession of the bequest pursuant to paragraph 3.8. Loyola University, the residuary legatee, joined in the petition. A second partial sworn descriptive list of assets was filed with the petition, which excepted certain movable property from the contents of the building.
In addition, Mr. Hardy filed a multi-volume accounting into the record on 17 May 2000, to which no objection was filed and which was homologated by the trial court on 2 June 2000. The accounting contained a separate itemization of the revenues and income of the WRNO building showing a net loss of $23,992.51.
Mr. Costello filed a motion to traverse the descriptive list objecting to the exception of the movable property and noting a dispute as to the classification of a satellite *66 dish, as well as questioning items alleged to comprise the contents of the WRNO building, including a radio station, the proceeds from the sale of KXOR FM, and the net rental income from the budding from 23 April 1997' to the date of the motion to traverse. The motion also objected to Loyola University being placed into possession of the naked ownership of the WRNO building at the same time that Mr. Costello was placed into possession of the usufruct.
Finally, on 28 March 2000, Mr. Costello filed a motion to compel an independent audit of succession assets bearing directly on the claim for rentals and expenses of the WRNO building. The motion was based on an informal accounting for the property dated 17 February 2000.
The matter was heard by the trial court on 3 May 2000, at which time Mr. Hardy testified on behalf of the succession. The trial court held that the language 13in paragraph 3.8, “all contents,” did not include the two radio stations, although the stock certificates evidencing the decedent’s ownership of these separate and distinct entities, i.e., corporations, were allegedly kept in the decedent’s personal office in the WRNO building.[2] Further, the court held that any property located in the building that was owned by these two corporations could not be considered as part of the building’s contents.
The trial court found support for this interpretation in the provisions of paragraph 4.2 of the testament, which states:
Except for the assets identified in paragraphs 3.3 and 3.4 and subject to the provisions of 3.2, 3.3, 3.6 and 3.7 hereof, I direct my Executor to sell all of the assets of my Estate and deliver the proceeds of the sale to Loyola University New Orleans to be used for the establishment of the said Joseph M. Costello Endowment Fund.
In order to give effect to the provisions of paragraph 4.2, the trial court noted that no reference to paragraph 3.8 was included. If the testator had intended to include KXOR, WRNO Worldwide, as well as any other property whose evidence of ownership may have been located in the WRNO building, there would be little left to sell to fund the endowment fund. In order to give effect to this provision, the court concluded that the decedent must have intended that these assets be sold.
The trial court also found no reason to keep the succession open to accomplish what Mr. Costello wanted, i.e., to place Mr. Costello into possession of the usufruct only until his death, at which time Loyola University would be placed into possession of the naked ownership interest. Further, the trial court held that the satellite dish was owned by separate and distinct legal entities and did not form part of the decedent’s estate. Therefore, the dish was not subject to Michael’s | ¿usufruct. Finally, the trial court found no justification in the record for an independent accounting.
Mr. Costello appeals from this judgment, arguing that the trial court erred in all aspects of its judgment.
In contests over testaments, the factual findings of the trial court are afforded great weight and cannot be disturbed on appeal in the absence of manifest error. In re Succession of Fellman, 96-1738 (La.App. 4 Cir. 8/6/97), 698 So.2d 477.
La. C.C. art. 1611 states:
The intent of the testator controls the interpretation of his testament. If the *67 language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply only when the testator’s intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence.
The Supreme Court in Succession of Williams, 608 So.2d 973, 975 (La.1992), reviewed the law on interpretation of a testament as follows:
The intent of the testator is the paramount consideration in determining the provisions of a will. La. Civ.Code art. 1712 [present La. Civ.Code art. 1611]. When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Id. However, when a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator. La. Civ.Code art. 1715 [present article 1611].
Mr. Costello argues the trial court erred as a matter of law when it admitted the testimony of Mr. Hardy because paragraph 3.8 is unambiguous. The parties disagree as to its exact meaning. Therefore, the trial court was obligated to determine the testator’s intent at the time the testament was drafted. Mr. Hardy | Kwas the only living individual who could give testimony on this issue. We find that the trial court did not err in permitting him to testify.
We, however, find it unnecessary to rely on Mr. Hardy’s testimony because we find that the testator’s intent is clear from a reading of the testament as a whole. First, the word “contents” means objects found in the building that belonged to the decedent. The decedent could not dispose of the property of the two corporations, as those items did not belong to him, in spite of his one hundred percent ownership of the stock. This reasoning is supported by Succession of Huguet, 96-2663 (La.App. 1 Cir. 4/8/98), 708 So.2d 1302, a case cited by the trial court. There, the court recognized that in Louisiana, when the title to real property is transferred to a partnership or corporation, a real change in ownership, not a mere change in form, occurs, and the partners or shareholders no longer have any direct ownership interest in the property. Thus, the testator’s transfer of immovable property to a limited partnership in exchange for “shares” in that partnership eliminated any ownership interest of the testator in the property. Id. at p. 5, 708 So.2d at 1305.
In the instant matter, the decedent formed his corporations in 1991 and transferred to them certain property; that property was properly excluded from the descriptive list of the “contents” of the WRNO building. The decedent did not own those items; they were owned by the corporations. A testamentary bequest is a donation. Id. At the time of his death, the testator did not own any title, right, or interest in those items that are disputed, and therefore, could not donate them to Michael in paragraph 3.8.
However, Mr. Costello argues that because the stock certificates evidencing the decedent’s ownership in the corporation were kept in the decedent’s personal office in the building, the decedent intended the “contents” to include the | incorporations. We find this argument to be without merit. First, no evidence in the record establishes that the stock certificates were even in the building. Howev *68 er, even if they were found there, the certificates themselves are
merely a paper evidence, created for convenience, of the ownership of the share of stock; that it is not the thing which is the subject of ownership, but the thing which is the subject of ownership is the share of stock itself. Succession of McGuire, 151 La. 514, 92 So. 40 (La.1922); Dardeau v. Fontenot, 326 So.2d 521 (La.App. 3rd Cir.1976); Finn v. Ponsaa, 308 So.2d 352 (La.App. 4th Cir.1975), writ denied, 313 So.2d 238 (La.1975). A stock certificate is prima facie evidence of corporate ownership, but it is to be distinguished from actual ownership which may be determined from all the facts and circumstances of a case. Fireplace Shop v. Fireplace Shop of Lafayette, 400 So.2d 702 (La.App. 1st Cir.1981).
Castiel v. Hegenbarth, 539 So.2d 931, 933-34 (La.App. 4 Cir.1989). Therefore, the mere presence of the certificates, without the donative intent of the decedent that Mr. Costello should assume ownership of the corporations and their property, is unpersuasive.
We find it significant that the testator did not make a specific bequest of the stock of the corporations. Therefore, we must look to paragraph 4.2 to determine how to dispose of the property:
Except for the assets identified in paragraphs 3.3 and 3.4 and subject to the provisions of 3.2, 3.3, 3.6 and 3.7 hereof, I direct my Executor to sell all of the assets of my Estate and deliver the proceeds of the sale to Loyola University New Orleans to be used for the establishment of the said Joseph M. Costello Endowment Fund. (Emphasis added.)
It is clear to the court that the decedent wished that the corporations (ie., the stock in the corporations) and/or the assets of the corporations be sold and the money used to establish an endowment fund at Loyola University.
|7The second assignment of error concerns the trial court’s ruling that Loyola University be placed into possession of the naked ownership interest of the WRNO building at the same time that Mr. Costello is placed into possession of the usufruct. This is a customary practice in an ordinary judgment of possession, whether final or partial. In doing so, the trial court followed the directive of La. C.C.P. art. 3197: “It shall be the duty of a succession representative to close the succession as soon as advisable.” There is no reason to keep the succession open until Mr. Costello’s death. Further, our Civil Code imposes upon naked owners and usu-fructuaries different rights and obligations. The transfer to Loyola University and Mr. Costello of their respective interests by operation of law assigns the rights, obligations, and duties to the respective parties. The trial court acted properly and we find no merit in this assignment.
Finally, Mr. Costello argues that the trial court erred in failing to order an independent accounting. Based on the evidence in the record, we do not find that the trial court was clearly wrong or manifestly erroneous in denying this request, since it was based on an informal accounting of a portion of the estate.
Mr. Costello filed his motion to compel an independent accounting on 28 March 2000. In support of the motion, he attaches what he claims is the estate’s accounting for the WRNO building, namely, computer data sheets dated 17 February 2000. However, the formal accounting for the succession was not filed until 17 May 2000, to which no objection was filed; it was subsequently homologated by the court without opposition. In order to challenge the accounting, Mr. Costello was re *69 quired to traverse the 17 May 2000 accounting; he did not do so. In any event, the trial court allowed him to present evidence at the hearing in support of his motion to compel. However, as noted by the court, no |Revidence was presented by Mr. Costello to support his allegations. The estate presented the uncontradicted testimony of Mr. Hardy, who prepared the accounting. The trial court found no reason to doubt his testimony or the accounting. We agree with the trial court’s finding. This assignment is without merit.
For the reasons set forth above, we affirm the trial court’s judgment. All costs of this appeal are assessed against the appellant.
AFFIRMED.

. See also Nos. 2000-CA-2552 (La.App. 4 Cir. 2/13/02), 809 So.2d 533 and 2001-CA-0184 (La.App. 4 Cir. 2/13/2002), 811 So.2d 69.

. The trial court noted that no evidence was offered into the record that the original stock certificates were in fact located in the building.