NOBIAS, JR., Judge.
This is the third of three appeals before us arising out of the Succession of Joseph M. Costello, III.[1] Joseph M. Costello, III, died testate on 23 April 1997, survived by his mother and three brothers; Loyola University is named as residuary legatee in the decedent’s testament. The testament named Michael Costello (“Mr. Costello”) and Ashton Hardy (“Mr. Hardy”) as co-executors; Mr. Hardy is an attorney-at-law who previously represented the decedent in his business affairs and who had drafted the testament.
As part of his estate, the decedent owned a leasehold interest in a boathouse on the lakefront, a yacht, and several motor vehicles. The testament made no specific disposition of these items. Mr. Costello claims that his brother, the decedent, intended to bequeath these items to him under the following provision of the will:
3.4 If my brother, Michael Costello, shall survive me, then, subject to a lifetime usufruct in my mother, I give, devise, and bequeath to my brother, Michael Costello:
[[Image here]]
(B) All articles of personal adornment, usage or apparel owned by me at the time of my death. (Emphasis added.)
| PMr- Costello has maintained throughout the litigation that paragraph 3.4(B) includes the boathouse, yacht, and vehicles because they were items “personally used” by his brother during his lifetime. The succession and Loyola University have taken a contrary view of the testament, arguing that these items should be sold and the proceeds given to Loyola University as the residuary legatee.[2]
After a hearing, the trial court held that the phrase “personal adornment, usage or apparel” excluded the boathouse, yacht, and vehicles. The ruling was in part based on paragraph 3.1 of the testament, wherein the decedent bequeathed to Mr. Costello (in full ownership) a Lunt silver set and a baby grand piano. The trial court believed that had the decedent intended to leave such large identifiable assets as the boathouse, yacht, and vehicles to Mr. Costello, he would have done so in paragraph 3.1, along with the other specific bequests. The trial court also relied upon the testimony and notes of Mr. Har *71 dy, which supported its interpretation of the paragraph in question.
On appeal, Mr. Costello argues that the trial court erred in its interpretation of the testament, in part by reading paragraph 3.1 out of context; he further contends the court erred in admitting the hearsay and opinion testimony of Mr. Hardy.
In testament contest cases, the factual findings of the trial court are afforded great weight and cannot be disturbed on appeal in the absence of manifest error. In re Succession of Fellman, 96-1738 (La.App. 4 Cir. 8/6/97), 698 So.2d 477.
La. C.C. art. 1611 states:
IsThe intent of the testator controls the interpretation of his testament. If the language of the testament is clear, its letter is not to be disregarded under the pretext of pursuing its spirit. The following rules for interpretation apply only when the testator’s intent cannot be ascertained from the language of the testament. In applying these rules, the court may be aided by any competent evidence. (Emphasis added.)
The Supreme Court in Succession of Williams, 608 So.2d 973, 975 (La.1992), reviewed the law on will interpretation as follows:
The intent of the testator is the paramount consideration in determining the provisions of a will. La. Civ.Code art. 1712 [present La. Civ.Code art. 1611]. When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Id. However, when a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator. La. Civ.Code art. 1715 [present article 1611].
In the instant case, we are required to determine the meaning of the phrase, “personal adornment, usage or apparel.” Under the provisions of article 1611, the intent of the testator is gathered from the words of the testament. When the words of the testament are plain and unambiguous, the testator’s intent should be ascertained from the language used in the testament, giving the words used their usual significance. Succession of Vatter, 192 La. 657, 188 So. 732, 736 (1939). The language used in the testament “must be understood according to its common, popular acceptation.” Id.
Other courts have had occasion to define the word “personal.” In Succession of Meeks, 609 So.2d 1035 (La.App. 2 Cir. 1992), the testament at issue used the term “personal belongings.” The court held that, when given its usual and ordinary meaning, the term would not include business property and various financial holdings. Instead, the term would include those things that have “some intimate | ¿relation to the person of the testatrix such as household items, jewelry, home furnishings, clothing and other items which are truly personal in nature.” Id. at 1038.[3] This definition was cited with approval in Dupuy v. Walther, 98 669 (La.App. 3 Cir. 10/28/98), 721 So.2d 995, although the court distinguished Meeks on its facts.
With respect to the other words used in the phrase at issue, we have consulted an outside source. According to Webster’s New Collegiate Dictionary (1981), “adorn” means “to add something to for the pur *72 pose of making more attractive,” whereas “apparel” means “something that clothes or adorns.” There does not seem to be any disagreement with respect to the decedent’s clothing, jewelry, and other similar articles. The dispute concerns the word “usage,” which, according to Webster’s, has two distinct and different meanings. On the one hand, “usage” means “the action, amount or mode of using.” However, the word also denotes “a firmly established and generally accepted practice or procedure.” This latter definition is similar to that used in La. C.C. art. 2055, which defines “usage” in the context of contracts as “a practice regularly observed in affairs of a nature identical or similar to the object of a contract subject to interpretation.”
Because the word “usage” has two distinct meanings, we look beyond paragraph 3.4(B) to determine the decedent’s intent. We first look to paragraph 3.5 and find that the decedent made an alternate bequest of those items with which Mr. Costello is concerned:
3.5 If I am not survived by my mother or my brother, Michael Costello, then I give all of those items of tangible movable property herein-above described |Bin Subsections (A) and (B) of Section 3.4 to my brother, Martin Costello. (Emphasis added.)
Because the decedent intended to bequeath only tangible movable property to Mr. Costello in paragraph 3.4(B), the leasehold interest in the boathouse cannot be included. Therefore, only the vehicles and yacht remain at issue.
We next look to paragraph 3.1 in which the decedent made his only specific bequests. We find, as did the trial court, that had the decedent intended to donate his yacht and vehicles to Mr. Costello as specific bequests, this is the paragraph in which the bequest would probably be found.
Finally, we consider whether it was error for the trial court to consider, as extrinsic evidence, the testimony of Mr. Hardy who prepared the testament in order to ascertain the intent of the testator. A court must interpret a testament according to its plain language since “the intent of the testator is the paramount consideration in determining the provisions of a will.” Succession of Schiro, 96-1567 (La.App. 4 Cir. 4/9/97), 691 So.2d 1374, 1377. However, when ambiguity clouds the testator’s intent, “the court may consider all circumstances existing at the time of the execution of the will, and not just the language of the will, which may aid in determining the intent of the testator.” Id.
We have reviewed the testimony of both Mr. Costello and Mr. Hardy on the issue at hand. Mr. Costello admits that his brother spoke to him about the testament before it was drafted and that he was aware that the decedent intended that most of his estate be sold with the proceeds given to Loyola University. Mr. Hardy testified that the language used in paragraph 3.4(B) was meant to describe things such as a ring, a wrist watch, all of his clothing, and the things the decedent wore on a day-to-day basis; the words were never intended to include a boat and | ^automobiles. When Mr. Hardy asked the decedent about the boat, the boathouse, and the vehicles, he was specifically directed to sell then and give the money to Loyola University.
We recognize that the court in Succession of Meeks, supra, included an automobile in the testatrix’s “personal belongings” because the vehicle in question was used by the decedent on a daily basis. However, in the case before us, the evidence *73 clearly demonstrates that because of his health and disabilities, the decedent was unable to use any of his vehicles and had not personally done so for about two years before his death. Reinforcing this conclusion further is the decedent’s execution of the testament on 5 March 1997; he died on 23 April 1997, forty-nine days later. Thus, he had not been personally using the vehicles for approximately two years before his death. This evidence, combined with specific bequests in paragraph 3.1, convinces us that the property in question cannot be included in the term, “personal .... usage”, under the provisions of the testament before us.
Considering the record before us, we find that the decision of the trial court was neither clearly wrong nor manifestly erroneous. Consequently, we affirm the judgment and assess all costs of this appeal to the appellant, Mr. Costello.
AFFIRMED.

. See also Nos.2000-CA-2552 (La.App. 4 Cir. 2/13/02), 809 So.2d 533 and 2000-CA-2672 (La.App. 4 Cir 2/13/02), 811 So.2d 63.

. The decedent, who owned several radio stations, wanted Loyola University to establish the Joseph M. Costello Endowment Fund at Loyola's College of Communications. He intended to start the fund with a particular cash bequest of $350,000.00 and that the proceeds of the estate's assets would further be included in the endowment fund.

. We note that the Meeks court included a 1982 Buick Electra automobile as part of the testatrix's “personal belongings,” as the vehicle was used in her daily life.